AO 93 (Rev. 5/87) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

In the Matter of the Search of
    One (1) single Western Digital 120 GB Hard Drive
    Model # WD1200JB-75CRAO,
    Serial #WMA8C3553998

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: 08- 79-DLD

I, THOMAS TEDDER, being duly sworn, depose and say:

I am a Special Agent with the Federal Bureau of Investigation and have reason to believe that ☐ on the person of or ☒ on the property or premises contained in the One (1) single Western Digital 120 GB Hard Drive, Model # WD1200JB-75CRAO, Serial #WMA8C3553998 turned over to the FBI, as described more particularly in the attached Affidavit of Thomas Tedder.

*******SEE ATTACHMENT A*******

in the Middle District of Louisiana, there is now concealed a certain person or property, namely (describe the person or property to be seized)

*******SEE ATTACHMENT B*******

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence of the commission of a criminal offense and property used as the means of committing a criminal offense concerning a violation of Title __18__, United States Code, Section(s)__2252 and 2252A__. The facts to support a finding of Probable Cause are as follows:

*******SEE AFFIDAVIT*******

Continued on the attached sheet and made a part hereof.      ☒ Yes ☐ No

Signature of Affiant
Thomas Tedder, Special Agent
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence

December 5, 2008      at      Baton Rouge, Louisiana

Date            City and State

Docia L. Dalby, U.S. Magistrate Judge

Name and Title of Judicial Officer      Signature of Judicial Officer

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

IN THE MATTER OF THE SEARCH OF

> One (1) single Western Digital 120 GB Hard Drive,
> Model # WD1200JB-75CRAO, Serial #WMA8C3553998

I, Thomas Tedder, being duly sworn, depose and state the following:

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), assigned to the Special Agent in Charge in New Orleans. I have been so employed since September 23, 2001. As part of my daily duties as an FBI Special Agent, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. I have also participated in the execution of over thirty search warrants, many of which involved child exploitation and/or child pornography offenses.

2.      This affidavit is submitted in support of an application for a search warrant for: one (1) single Western Digital 120 GB hard drive, model # WD1200JB-75CRAO, serial #WMA8C3553998 ("Western Digital hard drive") currently secured at the FBI Baton Rouge Resident Agency evidence room for evidence of violations of Title 18, United States Code, Sections 2252 and 2252A. The Western Digital hard drive is more fully described in Attachment A.

3.      Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18, United States Code, Sections 2252 and 2252A are presently located on the Western Digital hard drive.

## RELEVANT STATUTES

4.      This investigation concerns alleged violations of 18 U.S.C. Sections 2252 and 2252A, relating to material involving the sexual exploitation of minors.

5.      18 U.S.C. 2252 and 2252A prohibit a person from knowingly transporting, receiving, distributing, or possessing in interstate or foreign commerce, by computer or mail, any visual depiction of minors engaging in sexually explicit conduct (child pornography).

## DEFINITIONS

6.      The following definitions apply to this Affidavit and Attachment B to this Affidavit:

7.      "Child Pornography" includes the definition in 18 U.S.C. 2256(8)(A) (any visual depiction of sexually explicit conduct where (A) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct.)

8.      "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  See 18 U.S.C. 2256(5).

9.      "Minor" means any person under the age of eighteen years.  See 18 U.S.C. 2256(1).

2

10.    "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. See 18 U.S.C. 2256(2).

11.    "Internet Service Providers" or "ISPs" are commercial organizations which provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers, including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer various means by which to access the Internet including telephone based dial-up, broadband based access via a digital subscriber line ("DSL") or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, that the connection supports. Many ISPs assign each subscriber an account name such as a user name or screen name, an e-mail address, and an e-mail mailbox, and the subscriber typically creates a password for the account. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and password.

12.    "Domain Name" refers to the common, easy to remember names associated with an Internet Protocol address. For example, a domain name of "www.usdoj.gov" refers to the Internet Protocol ("IP") address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period. Each level, read backwards – from right to left – further identifies parts of an organization. Examples of first level, or top-level domains are typically ".com" for commercial organizations, ".gov" for the governmental

3

organizations, ".org" for organizations, and, ".edu" for educational organizations.  Second level

names will further identify the organization, for example "usdoj.gov" further identifies the

United States governmental agency to be the Department of Justice.  Additional levels may exist

as needed until each machine is uniquely identifiable.  For example, "www.usdoj.gov" identifies

the World Wide Web server located at the United States Department of Justice, which is part of

the United States government.

13.     "Log Files" are records automatically produced by computer programs to

document electronic events that occur on computers.  Computer programs can record a wide

range of events including remote access, file transfers, logon/logoff times, and system errors.

Logs are often named based on the types of information they contain.  For example, web logs

contain specific information about when a website was accessed by remote computers; access

logs list specific information about when a computer was accessed from a remote location; and

file transfer logs list detailed information concerning files that are remotely transferred.

14.     "Hyperlink" refers to an item on a web page which, when selected, transfers the

user directly to another location in a hypertext document or to some other web page.

15.     "Website" consists of textual pages of information and associated graphic images.

The textual information is stored in a specific format known as Hyper-Text Mark-up Language

("HTML") and is transmitted from web servers to various web clients via Hyper-Text Transport

Protocol ("HTTP").

16.     "Uniform Resource Locator" or "Universal Resource Locator" or "URL" is the

unique address for a file that is accessible on the Internet.  For example, a common way to get to

a website is to enter the URL of the website's home page file in the Web browser's address line.

Additionally, any file within that website can be specified with a URL.  The URL contains the

4

name of the protocol to be used to access the file resource, a domain name that identifies a specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

17.    The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, or painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies), mechanical form (including, but not limited to, phonograph records, printing, or typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact disks, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital versatile disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

## BACKGROUND REGARDING SEIZURE OF COMPUTERS

18.    Based upon my knowledge, training and experience, and the experience of other law enforcement personnel, I know that searches and seizures of evidence from computers commonly require agents to seize most of the computer items (hardware, software, and instructions) to be processed later by a qualified computer expert in a laboratory or other controlled environment.  That is almost always true because of the following:

19.    Computer storage devices (like hard drives (both internal and external), digital versatile disks (DVDs), compact disks (CDs), other diskettes, tapes, and other forms of digital

media) can store the equivalent of hundreds of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she may store it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This examination process can take weeks or months, depending on the volume of the data stored, and it would be impractical to attempt this kind of data search on-site.

20.     Searching computer systems for criminal evidence is a highly technical process requiring expert skills in a properly controlled environment. The vast array of computer hardware and software available today requires even computer experts to specialize in some systems and applications. It is difficult to know before a search which expert should analyze the system and its data. A search of a computer system is an exacting scientific procedure, which is designed to protect the integrity of the evidence and to recover hidden, erased, compressed, password-protected, and other encrypted files. Because computer evidence is extremely vulnerable to tampering and destruction (both from external sources and from code embedded in the system as a "booby-trap"), the controlled environment of a laboratory is essential to its complete and accurate analysis.

21.     In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices, as well as the central processing unit ("CPU"). In cases like this one, where the evidence consists partly of graphic files, the monitor and printer are also essential to show the nature and quality of the graphic images that the system can produce. In addition, the analyst needs all assisting software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instructional manuals or other documentation

6

and security devices.  Moreover, searching computerized information for evidence or instrumentalities of crime commonly requires the seizure of the entire computer's input/output periphery devices (including related documentation, passwords, and security devices) so that a qualified expert can accurately retrieve the system's data in a controlled environment.  Peripheral devices, which allow users to enter and retrieve data from stored devices, vary widely in their compatibility with other hardware and software.  Many system storage devices require particular input/output devices in order to read the data on the system.  It is important that the analyst be able to properly retrieve the evidence sought.

22.      In addition to being evidence of a crime, in cases of this sort, there is probable cause to believe that the computer and its storage devices, the monitor, keyboard, printer, modem, and other system components were used as a means of committing offenses involving the sexual exploitation of minors in violation of law, and should all be seized on that basis alone.  Accordingly, permission is sought herein to seize and search computers and related devices consistent with the scope of the requested search.

## TAINT TEAM AND PROSECUTION TEAM

23.      Because the search of the Western Digital hard drive involves the property and the premises of an attorney, the following precautions will be employed to ensure that any attorney-client privileged materials will be protected.

(a)      George William Jarman ("JARMAN") is an attorney, licensed to practice in the State of Louisiana, and is currently listed as active in Louisiana Secretary of State Records with a Bar Roll Number of ███.  Consequently, some of the information seized may relate to his clients and be subject to attorney-client privilege.  Every effort will be made not to gain access to privileged information.  Therefore, your Affiant will utilize other FBI agents or employees, and a Trial Attorney with the U.S. Department of Justice, as a "Taint Team," to view any potentially privileged material.

7

(b)     A "Taint Team" will be used to search Western Digital hard drive, and
non-privileged materials responsive to the warrant will be provided to a
"Prosecution Team." Any suspected privileged materials will be collected
by the "Taint Team;" a computer forensic analyst will extract information
from the computer storage systems and digital media, and a Trial Attorney
with the U.S. Department of Justice will review the extracted information
to determine whether such materials are, in fact, privileged. Members of
the "Taint Team" will not be involved in the investigation and will be
instructed not to discuss the case or materials with any members of the
"Prosecution Team."

(c)     If any materials appear to be so privileged, such materials will be
segregated by the forensic analyst and will be designated as such. The
privileged materials will not be revealed in any way to members of the
"Prosecution Team," including the prosecutor, case agent, or any other
material witnesses. The privileged materials will be returned to
JARMAN.

(d)     The "Taint Team" will forward to the "Prosecution Team" any and all
materials that are not privileged materials.

(e)     If the "Taint Team" disagrees on whether or not certain materials are
privileged, such materials will be submitted to a United States Magistrate
Judge or United States District Court Judge for a ruling as to whether the
privilege applies and/or whether the materials fall within any exception to
the attorney-client privilege;

(f)     The arguably privileged materials retained by the "Taint Team" will not be
shown to the "Prosecution Team" unless and until a Judge determines that
the materials are not privileged or fall within any exception to the
attorney-client privilege;

(g)     Computer files will be initially examined by the "Taint Team" to
determine relevance and privileged status in accordance with the above-
described procedure.

(h)     Privileged information belonging to other attorneys should not be
captured.

## BACKGROUND REGARDING COMPUTERS AND CHILD PORNOGRAPHY

24.     The computer's capability to store images in digital form makes it an ideal
repository for child pornography. A single compact disk can store hundreds of images and tens

8

of thousands of pages of text. A single digital versatile disk can store tens of thousands of images and hundreds of thousands of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 250 gigabytes are not uncommon. These drives can store hundreds of thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

     25.     With Internet access, a computer user can transport an image file from the Internet or from another user's computer to his own computer, so that the image file is received and stored in his computer. The process of transporting an image file to one's own computer is called "downloading." The user can then display the image file on his computer screen, and can choose to "save" the image on his computer and/or print out a hard copy of the image by using a printer device (such as a laserjet or inkjet printer).

     26.     Importantly, computer files or remnants of such files can be recovered months or even years after they have been downloaded, stored, or saved onto a hard drive; deleted; or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they may be recoverable months or years later using readily-available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted

9

files, may reside in free space or slack space – that is, in space on the hard drive that is not

allocated to an active file or that is unused after a file has been allocated to a set block of storage

space – for long periods of time before they are overwritten.  In addition, a computer's operating

system may also keep a record of deleted data in a "swap" or "recovery" file.  Similarly, files

that a user requests to view via the Internet are downloaded by a user's web browser into a

temporary Internet directory or cache.  The browser typically maintains a fixed amount of hard

drive space devoted to these files, and the files are only overwritten as they are replaced with

more recently viewed Internet pages.  Thus, the ability to retrieve residue of an electronic file

from a hard drive depends less on when the file was downloaded or viewed than on a particular

user's operating system, storage capacity, and computer habits.


## BACKGROUND OF INVESTIGATION

### "illegal.CP"

27.     In October 2005, Immigration and Customs Enforcement ("ICE") conducted an

investigation of a commercial website labeling itself "illegal.CP" ("'Illegal CP' website")[1] which

offered access to thousands of images and videos of child pornography via subscriptions of 20

and 30 days' duration.  The investigation revealed that the owners and operators of the "Illegal

CP" website have conspired with other corporate entities and individuals, including the operators

of a company known as "ADSOFT" to commercially distribute child pornography.

28.     Agents with ICE located a website known as the "Illegal CP" website at a URL

of http://hualama.cjb.net/, accessible via the Internet at that time through another web page

---

[1]  The term "CP" is an abbreviation commonly used on the Internet to denote "child
pornography."

10

located at a URL of http://deadundead.info/main.html, which was accessible via the Internet, including from New Jersey. The banner page of the website -- that is, the page which initially appeared and which did not require the person accessing the website to provide any financial or personal information -- labeled itself "illegal.CP," and featured more than one dozen images of minors engaging in sexual acts with other minors or adults.[2] The banner page further proclaimed that "[n]ow you are in [sic] few minutes away from the best children porn site on the net!" The banner page further stated that "[i]f you join this site you will get tons of uncensored forbidden pics (over 5 at this moment), forbidden stories, and, of course, many videos." The banner page also featured purported feedback from a self-described pedophile who praised the website. The words "join now" appeared at the top and bottom of the page.[3]

    29.    On or about October 26, 2005, an ICE agent acting in an undercover capacity purchased access to the "Illegal CP" website after accessing this banner page. In response to the undercover ICE agent's efforts to purchase a subscription to the website, an e-mail from theodore_dykstra@hotmail.com was received on October 27, 2005, at the undercover e-mail address established by ICE agents. That e-mail provided the undercover ICE agent with a login and a password to a URL of http://hualama.cjb.net/. The e-mail message also indicated that the credit card charges would appear on the undercover ICE agent's credit card bill as "ADSOFT" and would include a charge for $79.99.

---

[2] The banner page was actually part of the "deadundead" web page on October 26, 2005. This banner page, through which ICE agents obtained a subscription to the "Illegal CP" website, was captured and preserved by agents. Once a user clicked upon the "Join Now" button, a page requesting personal and credit card information appeared. This page was also technically part of the "deadundead" website. After entering the requested financial information, the user would receive e-mail confirmation of the purchase as well as a login and password to access the "Illegal CP" website.

[3] The content of the banner page itself was not located on the server containing the contents of the "Illegal CP" website, which was maintained during October and November 2005 on a server located in Orlando, Florida, but on another server located in California.

11

30.       Upon entering the login and password provided via the e-mail from

theodore_dykstra@hotmail.com, the undercover ICE agent was able to gain access to the "Illegal

CP" website. Upon accessing the website, a URL of http://hualama.cjb.net appeared. The top of

the initial page which appeared upon entry into the website stated as follows:

> FAQ, Please read. "Our site is considered to be illegal in all countries....
> Even if you ever have problems with police, you can always say that
> someone had stolen the information from your credit card and used it. It is very difficult
> to establish that you were the person to pay."

31.       Upon examination of the contents of the website, ICE agents determined that it

contained thousands of images of child pornography. Upon placing the cursor over a particular

image, a URL was listed at the bottom of the screen of "72.29.83.114/~medialo/1/index.html."

The website contained both still images and videos of child pornography, and offered the

purchase of additional videos through the website. For example, three of the still images of child

pornography found on the "Illegal CP" website are described as follows:

**http://72.29.83.114/~medialo/1/pics/300/0013.jpg**
This image depicts a nude, adult male sitting upon a floor with his legs spread wide apart.
A nude, prepubescent (under 12 years old) female is also depicted, and she is lying on her
back with her legs spread apart. The left hand of the male is holding the female's right
leg. His erect penis appears to be penetrating the prepubescent female's vagina.

**http://72.29.83.114/~medialo/1/pics/300/0022.jpg**
This image depicts a nude prepubescent (under 12 years old) female in a standing
position. She is facing an adult male who also appears to be standing. The male is
wearing what appears to be a dark-colored robe, but his genital area is exposed. The
prepubescent female has her left hand wrapped around the male's penis and appears to be
performing fellatio upon him.

**http://72.29.83.114/~medialo/1/pics/300/0073.jpg**
This image depicts what appears to be an adult male wearing a white shirt who is nude below the
waist. He appears to be lying upon a bed with red pillows. A nude, prepubescent (under 12
years old) female is sitting upon the bed next to the male. Her legs are bent so that her buttocks
rests on her feet. Her right hand is holding the male's penis.

12

32.     Investigators also focused upon the flow of the money generated by the credit card purchases of individual subscribers for access to the "Illegal CP" website. The financial investigation led to the identification of hundreds of additional subscribers to the "Illegal CP" website during the period from late February 2006 through mid-July 2006.

33.     Pursuant to a search warrant in September 2006 served on JetPay, a third party processor located in Carrollton, Texas, ICE agents retrieved data relating to credit card purchases to ADSOFT which were maintained on JetPay's computers. Upon review of this material, ICE agents determined that the information seized included a database of all attempted purchases which had been authorized and billed to ADSOFT from approximately February 1, 2006, through mid-July 2006. The data included the following items: the credit card number used to make the purchase and whether it was a Visa or MasterCard, the date and time at which the purchase was processed, the name that the individual submitting the information had provided to secure the purchase, and the address of the purchaser to include street address, city or town, zip code and country.

34.     During the course of the investigation, ICE agents were also able to pinpoint a server through which data flowed when a customer attempted to subscribe to the "Illegal CP" website. On or about March 14, 2006, computer forensic agents in the ICE office in Newark, New Jersey performed an analysis of the join page of the "Illegal CP" website, namely, the page located at a URL of http:deadundead.info/join/html. Using commercially available software, ICE agents determined that the personal and credit card information entered on the form provided by clicking the "Submit" button on the join page of the "Illegal CP" website was transmitted to another website located at a URL of http://pringless.com (hereinafter the "Illegal CP" subscription website). Through the use of a commercially available search tool, agents

13

determined that the "Illegal CP" subscription website was located at AltaVista Company in Sunnyvale, California, and this information was subsequently verified in early April 2006. A search of the server on which the data from the "Illegal CP" subscription website was maintained was performed on or about May 4, 2006 pursuant to a court-authorized search warrant. A review of the contents of this server revealed that certain data that had been input by many would-be subscribers to the "Illegal CP" website had been preserved, including the date and time they had attempted to subscribe, the e-mail address which they had supplied and the physical address which they had listed including street address, state, country and zip code. By cross-referencing this data with the data from the JetPay server, agents were able to determine the e-mail address used by many individuals who successfully subscribed during the period from February 2006 through the very beginning of May 2006.

35.     The data gleaned from information obtained in the above-described search warrants identified George Jarman of 301 Main, Baton Rouge, with an email of

████████████)cox.net" as purchasing or attempting to purchase a subscription to "Illegal CP" on March 23, 2006 with a Visa credit card.

"Home Collection"

36.     In April 2006, ICE's Cyber Crimes Center, Child Exploitation Section initiated a separate investigation into a criminal organization operating and controlling numerous child exploitation websites. The investigation began with the identification of the commercial child exploitation website known as "Home Collection." The investigation has revealed that the same criminal organization which operated "Home Collection" is also operating in excess of 200

14

different commercial child exploitation websites. In addition, the organization utilizes PayPal[4]

accounts to process the members' payments for access to the member restricted websites.

37.    The initial member restricted website was located at URL:

http://members.homecollect.us and was known as "Home Collection." The monthly subscription

fees were $79.95 for the member restricted website known as "Home Collection." The criminal

organization charged subscription fees between $79.95 and $99.95 for the various member

restricted websites. The member restricted website solicited customers through an advertising

website. The member restricted website communicates with customers via several different e-

mail accounts. Between April 2006 and August 2007, ICE/C3/CES has conducted in excess of

150 undercover transactions at the various advertising websites associated with this

investigation, which provided access to approximately 40 different member restricted websites.

38.    Each one of the undercover purchases followed one of the below listed patterns:

**Pattern One:**
i.    The ICE agent accessed a specific advertising website.
ii.   The ICE agent was redirected to an "iWest" payment website and entered
      personally identifiable information, including credit card information. The
      "iWest" payment website identified a specific member restricted website through
      the use of website identifiers. The website identifiers corresponded to the
      descriptions in the SUBJECT column of the PayPal transactional records obtained
      for each of the PayPal accounts that processed subscriber payments.

---

[4] The following information was obtained from PayPal's website located at URL
http://www.PayPal.com: founded in 1998, PayPal, an eBay Company, enables any individual or business
with an email address to securely, easily and quickly send and receive payments online using a credit card
or bank account information. It is the most popular way to electronically pay for eBay auctions and it is
becoming an inexpensive way for merchants to accept credit cards in their on-line storefronts instead of
using a traditional payment gateway.  PayPal's service builds on the existing financial infrastructure of
bank accounts and credit cards and utilizes the world's most advanced proprietary fraud prevention
systems to create a safe, global, real-time payment solution. PayPal is a significant leader in online
payment solutions, with 78 million account members worldwide. PayPal is available in 56 countries and
regions around the world. Buyers and sellers on eBay, online retailers, online businesses, including
operators and hosts of Internet websites, as well as traditional offline businesses, transact with PayPal.
PayPal identifies its accounts by the contact email address or addresses an account holder provides to
PayPal as a contact address.

15

iii.   After completing the required information and clicking submit, the ICE agent was redirected to a second web page indicating the payment was currently being processed and to check for further information in the e-mail account provided by the ICE agent.

iv.   The ICE agent received an e-mail containing payment completion instructions, which included a hyperlink to a PayPal account.

v.   The ICE agent completed the transaction via the PayPal account.  The receipt received from PayPal at the conclusion of the transaction contained an Item/Product Number, which corresponded to the numbers in the ITEM ID column of the PayPal transactional records obtained for each of the PayPal accounts that processed subscriber payments.

vi.   The ICE agent received access to the member restricted website from one of the administrative e-mails associated with the criminal organization.

**Pattern Two:**

i.   The ICE agent accessed a specific advertising website.

ii.   The ICE agent was redirected to an "iWest" payment website and entered personally identifiable information, including credit card information.  The "iWest" payment website identified a specific member restricted website through the use of website identifiers.  The website identifiers corresponded to the descriptions in the SUBJECT column of the PayPal transactional records obtained for each of the PayPal accounts that processed subscriber payments.

iii.   After completing the required information and clicking submit, the ICE agent was redirected to a second web page indicating the payment was currently being processed.  The web page also contained a button the agent had to click to complete the payment.

iv.   The ICE agent clicked the button and was redirected to a secure PayPal payment web page.

v.   The ICE agent completed the transaction via the PayPal account.  The receipt received from PayPal at the conclusion of the transaction contained an Item/Product Number, which corresponded to the numbers in the ITEM ID column of the PayPal transactional records obtained for each of the PayPal accounts that processed subscriber payments.

vi.   The ICE agent received access to the member restricted website from one of the administrative e-mails associated with the criminal organization.

### "Home Collection" PayPal Accounts

39.   As indicated above, this criminal organization utilized multiple PayPal accounts to process payments for the monthly subscription fees to the member restricted websites.  PayPal maintains transactional records for each PayPal account.  The transactional records indicate at least the following items: date of purchase, amount of purchase, customer's IP address,

16

customer's e-mail address; seller's e-mail address; and Item ID.  The subject of the purchase refers to the SUBJECT column in the transactional records.  In addition, PayPal also captures the customer's full billing address.

40.     From approximately June 2006 to August 2007, ICE agents identified numerous child exploitation advertising websites that used the "iWest" payment website.  As described in the two patterns listed in paragraph 38, ICE agents that conducted the undercover transactions would enter personally identifying information at the "iWest" payment website, but would ultimately be redirected to PayPal to complete the transaction.  ICE agents made undercover transactions for access to child exploitation member restricted websites to the following PayPal accounts:

| Business Name | Primary E-Mail Address | Alternate E-Mail Addresses |
|---|---|---|
| Proof Soft | androdork@gmail.com | androdork@yahoo.com<br>bsbsoft8@yahoo.com |
| Lencomps LTD | zakiyyah777@yahoo.com | lencomps@juno.com |
| Proof Soft | a_chakin@yahoo.com | |
| Belfast LTD | belfastltd@juno.com | caly@phoenixorder.com<br>emhigh@charter.net |
| Belfast LTD | lag89@nc.rr.com | belfast-limited@juno.com |
| Financial Services | belfast_ltd@juno.com | MMcCary3401@charter.net<br>Financialservice@charter.net |
| Proof Soft | pallone21@gmail.com | softprf@yahoo.com |
| Bullet Proof Soft | rrpay@hotmail.com | freewash130@yahoo.com<br>bklnchicano@yahoo.com |
| Bullet Proof Soft | PReyes1101@hotmail.com | bs_soft66@yahoo.com<br>bsofteawh@yahoo.com<br>phillip_reyes2001@yahoo.com |
| Bullet Proof Soft | mr.corax@gmail.com | venusdemil023@aol.com<br>freeawh@yahoo.com |
| Bullet Proof Soft | bsb22flash@yahoo.com | oldervera@gmail.com |
| Lencomps LTD | itstime2change@hotmail.com | lencompsltd@juno.com |
| Jfire Financial | jufire@yahoo.com | a_service@freeawh.com<br>a_service@yahoo.com<br>jufire@hotmail.com<br>jufire@collegeclub.com<br>a_soft_tm@yahoo.com |

17

| A1_Soft_TM | webfs@email.com | a1_softm@yahoo.com |
| | | a1_soft_tm@yahoo.com |
| S_Market | carbonnoid@hotmail.com | s_market@yahoo.com |
| CS S'ven Enterprise | belfast_limited@juno.com | Carlos_Sumpter@charter.net |

## Subject Identifiers and Item IDs Used in the PayPal Accounts

41.     As discussed in paragraph 37, ICE agents have conducted over 150 undercover transactions during the course of this investigation.  The undercover transactions have identified a group of PayPal accounts that are being used to facilitate customer payments to specific child exploitation member restricted websites.  Those specific child exploitation member restricted websites can be identified in the PayPal transactional logs by either the description in the SUBJECT column or the Item ID number in the ITEM ID column.  Toward the end of November 2006, the criminal organization stopped using the listed descriptions in the SUBJECT column to identify the specific member restricted websites associated with each purchase.  They began using generic invoice numbers, with a sequential invoice number assigned to each transaction.  The invoice number cannot be used to identify the specific member restricted website.  In addition to the subject identifiers, the criminal organization also assigned Item IDs to each of the specific member restricted websites.  For each specific member restricted website, the criminal organization assigned a unique Item ID, which also appeared in the PayPal transactional logs.  The following descriptions were either extracted from the SUBJECT column or the "iWest" payment webpage.  They were then associated with a unique Item ID during the undercover transactions:

| SUBJECT description: | Item ID: |
|---|---|
| Home Collection 1000/Sexy Angels | 1000 |
| Home Collection 1001/Desired Angels | 1001 |
| Home Collection 1002 | 1002 |
| SickCR Package v5.06 Build 3638 | 1003 |

18

| | |
|---|---|
| DarkRO XP Tools v2.04 | 1004 |
| Underage Home | 1005 |
| Angel Collection 1006/Lolita Play | 1006 |
| Angel Collection 1007 | 1007 |
| Angel Collection 1010 | 1010 |
| HL Package/Hardlovers | 1012 |
| RH Collection | 1013 |
| FD2 Collections | 1014 |
| GOL-2 Collections | 1016 |
| EXTRA Collections | 1017 |
| LOH Collections | 1018 |
| LOPAR Collections | 1019 |
| NYMST Collections | 1020 |
| Secret Collections | 1021 |
| Lo Editions 3/4 collections | 1026 |
| BD Hot Collections | 1029 |
| BD-Photo Collections | 1030 |
| Lust Collections | 1034 |
| Red Vids 1 | 1035 |
| Red Vids 2 | 1036 |
| Secret Content 2 | 1037 |
| Shadow Com | 1038 |
| Charming | 1047 |
| Gentle Angels | 1049 |
| Video Nymphets | 1121 |
| Lo Video-2 Collections | 1126 |
| Pretty X-2 Collections | 1128 |
| Under Info-2 Collections | 1129 |
| Lo Editions 7/8 Collections | 1132 |
| BDM 1-4 Collections | 1135 |
| Phang Collections | 1138 |
| Spycam Lolitas | 1144 |
| Boys Say Go | 1156 |
| LS Pics v1.0 | 1158 |
| Video Shop CD1 | 1159 |
| Video Shop CD2 | 1160 |
| Video Shop CD3 | 1161 |
| Video Shop CD4 | 1162 |
| Video Shop CD5 | 1163 |
| Kidz Index | 1177 |
| Kinder schutz web | 1183 |
| Lolitas Mixed | 1193 |
| CP City | 1202 |
| Extreme Material | 1215 |
| Excited Angels | 1218 |

19

| | |
|---|---|
| CP Home Video | 1222 |
| Pedoland-Kidz Porn | 1224 |
| Kidz Index | 1227 |

## THE SUBJECT OF THIS SEARCH WARRANT

42.    Federal law enforcement agents have determined that an individual named George William JARMAN, who possessed the Western Digital hard drive described herein, and who currently resides at ████████, Baton Rouge, Louisiana, ████ ("RESIDENCE"), has subscribed to the several commercial child exploitation member restricted websites that were operated by the criminal organization identified in paragraphs 36 through 41. For the reasons set forth below, there is probable cause that evidence of the receipt and possession of child pornography will be located on the Western Digital hard drive.

43.    Analysis of the transactional logs obtained from PayPal, provide the name and address of various customers that purchased access to the commercial child exploitation member restricted websites operated by this criminal organization. ICE issued several administrative summons to PayPal for the PayPal account records for the PayPal accounts identified in paragraph 40. These records included transactions records for each of the listed PayPal accounts. The transactional records identified G. William Jarman as purchasing access to three different child exploitation member restricted websites on seven different occasions. Those purchases are noted as follows:

**October 29, 2006**
G. William Jarman made a payment to PayPal account "BELFAST_LTD@juno.com." The PayPal transactional logs provided the following relevant information:

The payment was for a member restricted website, also known as "Desired Angels," identified by Item ID 1001, in the amount of $79.95.

Date: October 29, 2006
Time: 09:01:47 AM PST

20

Name: G William Jarman
Subject: HomeCollection 1001 30 days access
Other IP: 68.11.157.247
Gross: $79.95
From Email Address: ██████████@cox.net
To Email Address: belfast_ltd@juno.com
Item ID: 1001
First Name: G William
Last Name: Jarman
Primary Email: ████████@cox.net
Primary Address: ██████████, Baton Rouge, Louisiana ████
Night Phone: 225-██████████
Referring URL:
http://maracaibo.btw.positiveattitudehq.com/ds/join/index.php?action=procced_info&id=9787&
key=50b3d6d1b3478105cbc584c064116de5

**November 3, 2006**
G. William Jarman made a payment to PayPal account "lencomps@juno.com." The PayPal
transactional logs provided the following relevant information:

The payment was for a member restricted website, also known as "Home Collection CP
Archive," identified by Item ID 1002, in the amount of $99.95.

Date: November 3, 2006
Time: 20:15:20 PM PST
Name: G William Jarman
Subject: HomeCollection 1002 30 days access
Other IP: 68.11.157.247
Gross: $99.95
From Email Address: ████████@cox.net
To Email Address: lencomps@juno.com
Item ID: 1002
First Name: G William
Last Name: Jarman
Primary Email: ████████)cox.net
Primary Address ██████████n Rouge, Louisiana ████
Night Phone: 225-██████████
Referring URL:
http://celsiuses.elm.bullstrainer.com/dp/join/index.php?action=procced_info&id=11419&key=19
2fbe70b1cba7d9ce0a08e6c8e8834b

**November 10, 2006**
G. William Jarman made a payment to PayPal account "belfastltd@juno.com." The PayPal
transactional logs provided the following relevant information:

21

The payment was for a member restricted website, also known as "Home Collection CP Archive," identified by Item ID 1002, in the amount of $99.95.

Date: November 10, 2006
Time: 17:51:19 PM PST
Name: G William Jarman
Subject: Invoice #12732
Other IP: 68.11.157.247
Gross: $99.95
From Email Address: ███████@cox.net
To Email Address: belfastltd@juno.com
Item ID: 1002
First Name: G William
Last Name: Jarman
Primary Email ███████@cox.net
Primary Address ███████n Rouge, Louisiana ███████
Night Phone: 225-███████
Referring URL:
http://ziarmrowmmf.us/join/index.php?action=procced_info&id=12732&key=bb36acebf17dc2cf1bc4722bb5bbb2f9

**November 14, 2006**
G. William Jarman made a payment to PayPal account "lencomps@juno.com." The PayPal transactional logs provided the following relevant information:

The payment was for a member restricted website, also known as "Desired Angels," identified by Item ID 1001, in the amount of $79.95.

Date: November 14, 2006
Time: 12:24:45 PM PST
Name: G William Jarman
Subject: Invoice #13537
Other IP: 68.11.157.247
Gross: $79.95
From Email Address: ███████@cox.net
To Email Address: lencomps@juno.com
Item ID: 1001
First Name: G William
Last Name: Jarman
Primary Email: ███████@cox.net
Primary Address: ███████, Baton Rouge, Louisiana ███████
Night Phone: 225-███████
Referring URL:
http://maakellasor.net/01/join/index.php?action=procced_info&id=13537&key=1963e379a87f07b9cb2bde1fa98cd3e6

22

**November 14, 2006**

G. William Jarman made a payment to PayPal account "belfastltd@juno.com." The PayPal transactional logs provided the following relevant information:

The payment was for a member restricted website, also known as "Sick Child Room," identified by Item ID 1003, in the amount of $99.95.

Date: November 14, 2006
Time: 13:58:53 PM PST
Name: G William Jarman
Subject: Invoice #13542
Other IP: 68.11.157.247
Gross: $99.95
From Email Address: ███████████@cox.net
To Email Address: belfastltd@juno.com
Item ID: 1003
First Name: G William
Last Name: Jarman
Primary Email: █████████cox.net
Primary Address: ████████, Baton Rouge, Louisiana ████
Night Phone: 225-███████
Referring URL
http://webmail.central.cox.net/do/mail/message/view?msgId=INBOXDELIM88191&l=en-US&v=cox

**November 24, 2006**

G. William Jarman made a payment to PayPal account "bsb22flash@juno.com." The PayPal transactional logs provided the following relevant information:

The payment was for a member restricted website, also known as "Home Collection CP Archive," identified by Item ID 1002, in the amount of $99.95.

Date: November 24, 2006
Time: 07:08:52 AM PST
Name: G William Jarman
Subject: Invoice #15121
Other IP: 68.11.157.247
Gross: $99.95
From Email Address: ██████████@cox.net
To Email Address: bsb22flash@juno.com
Item ID: 1002
First Name: G William
Last Name: Jarman
Primary Email ████████@cox.net

23

Primary Address: ████████, Baton Rouge, Louisiana ████
Night Phone: 225████
Referring URL:
http://jecikaow.com/join/index.php?action=finish&id=15121&key=3a54b272d24b45c749ddef14
4a02c25b

**January 4, 2007**
G. William Jarman made a payment to PayPal account "lencomps@juno.com." The PayPal
transactional logs provided the following relevant information:

The payment was for a member restricted website, also known as "Home Collection CP
Archive," identified by Item ID 1002, in the amount of $99.95.

Date: January 4, 2007
Time: 13:36:16 PM PST
Name: G William Jarman
Subject: Invoice #30885
Other IP: 68.11.157.247
Gross: $99.95
From Email Address ████████@cox.net
To Email Address: lencomps@juno.com
Item ID: 1002
First Name: G William
Last Name: Jarman
Primary Emai████████@cox.net
Primary Address: ████████, Baton Rouge, Louisiana ████
Night Phone: 225████
Referring URL: http://bumfucezrmc-
suugorunsej.net/join/index.php?action=finish&id=30885&key=b68d4d9a24b0a09a2ee73d2a5d1
3d8e4

    44.    As stated in paragraph 37, ICE Agents have conducted over 150 undercover

transactions during the course of this investigation. In conducting these undercover transactions,

ICE agents have identified specific subject identifiers and Item IDs that are associated with child

exploitation member restricted websites. As stated in paragraph 43, G. William Jarman

purchased access to three different child exploitation member restricted websites on seven

different occasions over a three month period. G. William Jarman purchased access to the child

exploitation member restricted websites identified by Item ID 1001, 1002, and 1003. Through

24

obtaining their own access to these child exploitation member restricted websites, investigators concluded the following: Item ID 1001 identifies a child exploitation member restricted website known as "Desired Angels;" Item ID 1002 identifies to a child exploitation member restricted website known as "Home Collection CP Archive;" and Item ID 1003 identifies a child exploitation member restricted website known as "Sick Child Room." Undercover purchases were conducted for "Desired Angels" (Item ID 1001) on 8/18/06; 9/5/06; 10/12/06; 11/1/06; 11/8/06; 11/13/06; 11/27/06; 12/12/06; 12/28/06; 1/19/07; 1/26/07; 2/26/07; and 3/7/07. Undercover purchases were conducted for "Home Collection CP Archive" (Item ID 1002) on 11/8/06; 11/13/06; 11/16/06; 12/2606; 1/16/07; 1/19/07; 1/26/07; 3/7/07; and 4/5/07. Undercover transactions were conducted for "Sick Child Room" (Item ID 1003) on 10/5/06; 10/10/06; 10/17/06; 10/23/06; 11/8/06; 12/7/06; 12/26/06; 12/28/06; 1/16/07; 1/23/07; 3/27/07; 4/5/07; 5/31/07; 5/13/07; and 8/24/07.

45.     As indicated in paragraph 43, PayPal captured a referring URL for each of G. William Jarman's transactions. The referring URL indicates the website the customer was viewing immediately prior to connecting to the PayPal payment page. ICE/C3/CES extracted the domain name from every URL identified in the subject seller accounts. For example, from the URL "http://www.sergespaysites.com/join.index.php?action=finish$is=22132&key=bc54d32fd3f204c 76d970f3700bad753," the domain name "sergespaysites.com" was extracted and provided to the National Center for Missing and Exploited Children (NCMEC). NCMEC was able to query their "CyberTipline" database to determine if the domain name had been reported previously to NCMEC. If a domain name had been reported previously to NCMEC and NCMEC was able to access the domain name, NCMEC further provided information as to whether the website at the

25

listed domain contained images of suspected child pornography.  The following two domain

names, "ziarmrowmmf.us" and "maakellasor.net," extracted from the referring URLs relating to

two of G. William Jarman's purchases, were reported by NCMEC to contain suspected child

pornography.

46.     The member restricted website associated with the subject identifiers Home

Collection 1001 and Desired Angels is known as "Desired Angels."  The member restricted

website contained the following sections: "Main Page;" "Photos;" "Video;" "Software;" "Msg

Board;" and "Support."  There were approximately 9,076 images files in the "Photos" section

and approximately 119 video files.  Several of the images depicted lascivious displays of the

female minors' genitalia.  The female minors were displayed in sexually suggestive manners.

The images were submitted to NCMEC, but NCMEC was unable to match any of the images

with identified ("known") victims.  The following image descriptions provide a sample of the

content of the member restricted website:

**Image 0013**
(http://desired.lolhost.com/members/photos/pearl-0036/0013.jpg)
This image displays a nude prepubescent (under 12 years old) female minor sitting on the floor.
Her left arm is to her side, bent at the elbow with her left hand resting on her left thigh.  Her right
arm is extended in front of her.  Her left leg appears to be bent at the knee, perpendicular to the
floor.  Her right leg appears to be bent at the knee and almost parallel to the floor.  Her legs are
spread apart and there is a clear display of her vagina.

**Image 0085**
(http://desired.lolhost.com/members/photos/old-2004-lolitas-0023/0085.jpg)
This image displays a close up shot of a nude prepubescent (under 12 years old) female minor's
vagina.  There are approximately 102 images of the same prepubescent female minor in the listed
gallery.  The majority of the images depict the female minor at the beach removing her bathing
suit.  This image focuses on her vagina.  The shot appears to have been taken from in front of the
female minor while she is lying on her right side.  Her legs are spread apart and there is a clear
display of her vagina.

**Image 0063**
(http://desired.lolhost.com/members/photos/ls-magazine-0003/0063.jpg)

26

This image displays two nude prepubescent (under 12 years old) female minors lying on the ground in what appears to be a wooded area. The female minor on the left is on her knees facing away from the camera. She is bent at the waist and her legs are spread apart so that her vagina is clearly displayed. The female minor on the right is lying on her back and left elbow facing the camera. Her right arm is bent at the elbow. She appears to be holding a piece of food that is partially obstructing her face. Her left leg is bent at the knee resting on the ground. Her right leg is bent at the knee, perpendicular to the ground. Her legs are spread apart and there is a clear display of her vagina.

47.    The member restricted website associated with the subject identifiers Home

Collection and Home Collection 1002 is known as "Home Collection CP Archive." The member

restricted website contained the following sections: "News;" "Photos;" "Videos;" and

"Software." There were numerous galleries contained within the "Video" section. The "Photos"

section contained one gallery with approximately 19 images.    Several of the images depicted

lascivious displays of the female minors' genitalia. The video files depicted female minors

engaged in sexually explicit conduct with adult males. The images were not submitted to

NCMEC. The following image descriptions provide a sample of the content of the member

restricted website:

**Image 014**
(http://homecollection.freeawh.com/members) (photos/retro/image014)
This image displays a prepubescent (under 12 years old) female minor in what appears to be a shower. The female minor is urinating onto the shower floor. There is a clear display of her vagina.

**Video b7**
(http://homecollection.freeawh.com/members) (videos/0002/b7)
This video depicts a nude prepubescent (under 12 years old) female minor engaged in oral copulation with an adult male. The video is approximately 30 seconds in length. The female minor is lying on the adult male's stomach with her right arm by the adult male's side. It appears that she has one leg over each of the adult male's shoulders.

**Video b14**
(http://homecollection.freeawh.com/members) (videos/0004/b14)
This video depicts a nude prepubescent female minor engaged in sexual intercourse with a nude adult male. The video is approximately 46 seconds in length. The video begins with the adult male attempting to push his penis into the female minor's vagina while the female minor is lying

27

on her back. The next screens show the adult male sitting on a couch with the female minor straddling his legs. He is holding the female minor and his penis is partially in the female minor's vagina.

48.    The member restricted website associated with the subject identifier SickCR Package v5.06 Build 3638 is known as "Sick Child Room." The member restricted website contained six separate sections: "Door 1;" "Door 2;" "Door 3;" "Door 4;" "Door 5;" and "Medic's Corner." There were in excess of 150 video files and 20,000 image files. The video and image files depicted prepubescent female minors engaged in sexually explicit conduct. The files included oral, anal and vaginal intercourse between prepubescent minors and adult males. The following descriptions provide a sample of the content in the member restricted website:

**Video Vicky_anal_best_one_yet**
(http://65.111.171.185/%7Eaone/cgi-bin/z/scr/zth.cgi/src) (Door 2)
This video file depicts scenes of a prepubescent (under 12 years old) female minor engaged in sexually explicit conduct with an adult male. The video begins with the female minor performing oral copulation on the adult male. At approximately 7:08 minutes into the video, the scene depicts a close up of the female minor masturbating. At approximately 20:10 minutes into the video, the scene depicts a close up of the adult male anally penetrating the female minor. The video is approximately 33:52 minutes in length.

**Video cd52.b3**
(http://65.111.171.185/%7Eaone/cgi-bin/z/scr/zth.cgi/src) (Door 2)
This video file depicts scenes of a prepubescent (under 12 years old) female minor engaged in sexually explicit conduct with an adult male. The female minor appears to be hiding her upper body under a cover while the adult male fondles her vagina and performs oral copulation. The video ends with the adult male ejaculating onto the female minor's vagina. The video is approximately 1:06 minutes in length.

**Image sabban66 (Sabban)**
(http://65.111.171.185/%7Eaone/cgi-bin/z/scr/zth.cgi/src) (Medic's Corner)
This image file depicts a prepubescent (under 12 years old) female minor engaged in sexual intercourse with a male. The female minor appears to be lying on her back with her legs spread. The male appears to be kneeling before the female minor with his penis inserted into her vagina.

<u>The Western Digital Hard Drive</u>

49.    On January 24, 2008, an owner of a computer store in Baton Rouge spoke with

28

Your Affiant. The owner (W1) indicated that Bill JARMAN, a senior partner in the Baton

Rouge law office of Kean Miller Hawthorne D'Armond McCowan & Jarman LLP, had

purchased a computer on November 26, 2007. The law office of Kean Miller Hawthorne

D'Armond McCowan & Jarman LLP is located at 301 Main Street, Baton Rouge, Louisiana

70802. JARMAN requested data from his old computer be transferred to the newly purchased

computer.

     50.     On November 26, 2007, W1 dispatched an employee (W2) to JARMAN's

residence at [redacted] Baton Rouge, Louisiana, [redacted] ("RESIDENCE"). In the process of

transferring data from the old computer to the newly purchased computer, W2 observed file

names W2 believed indicative of child pornography. The file names that were indicative of child

pornography included "underage" and "11yo." W2 contacted W1 and was advised by W1 to

finish the installation and bring the old computer's hard drive, a Western Digital 120 GB hard

drive, model # WD1200JB-75CRAO, serial #WMA8C3553998 ("Western Digital hard drive")

to W1. Per JARMAN's request, all data from the old computer, to include files depicting

suspected child pornography, was transferred over to the new computer at the RESIDENCE.

JARMAN requested W2 to delete, reformat, and install the old computer in another room at the

RESIDENCE. However, in order to bring the Western Digital hard drive back to the computer

store as instructed by W1, W2 replaced the Western Digital hard drive with a separate hard drive.

     51.     W2 brought the Western Digital hard drive back to the computer store. In order

to determine whether to contact law enforcement, W1 viewed the Western Digital hard drive.

W1 selected one file and observed a grainy image of an adult male sodomizing a male child. W1

believed the child to be less than 12 years old. W1 contacted the FBI.

     52.     On January 24, 2008, Your Affiant interviewed W1. W1 again described the

29

image file he observed on JARMAN's hard drive as a prepubescent male being anally penetrated by an adult male. W1 provided affiant with hard drive. Your Affiant has secured the Western Digital hard drive at the FBI Baton Rouge evidence control room.

<u>Internet Service Provider Information</u>

53.     On or about September 4, 2008, representatives of Cox Communications confirmed that the e-mail address ███████████@cox.net" was issued to Mr. William Jarman and subscribed to at the RESIDENCE.

54.     On or about September 4, 2008, representatives of Cox Communications confirmed that Internet service was activated at the RESIDENCE in the name of William Jarman on February 21, 2006, by Cox Communications, that Cox Communications has provided Internet service for William Jarman at the RESIDENCE since February 21, 2006, including the time periods that the subscriptions to the "Illegal CP" and "Home Collection" websites described above were purchased, and that as of September 4, 2008, the date that Cox Communications returned the subpoena to your Affiant, William Jarman's Internet service was still active.

55.     Cox Communications also confirmed that the phone number associated with William Jarman's Internet service at the RESIDENCE is (225) ████████, which is also listed as the night phone number for G. William Jarman in the payment information for each of the seven "Home Collection" member restricted website subscription purchases described above.

**INDIVIDUALS WHO RECEIVE AND POSSESS CHILD PORNOGRAPHY**

56.     Based on my previous investigative experience related to child pornography investigations, including investigations of subjects who subscribed to websites offering access to child pornography, I have learned that individuals who subscribed to such websites are often

30

individuals who have a sexual interest in children and in images of children, and who download

images and videos of child pornography.  The fact that JARMAN purchased a subscription to

"Illegal CP" in March 2006 and paid more than $600.00 between October 2006 and January

2007 to purchase seven memberships to three websites devoted to child pornography causes your

affiant to believe that JARMAN has a sexual interest in children.  In addition, JARMAN retained

images of child pornography from October 2006 to November 2007 on the computer located at

his residence.  JARMAN furthermore asked that all data from the old computer be transferred to

the new computer in his residence and that the old computer be installed in another room at

residence.  Based upon my knowledge, experience, and training in child pornography

investigations, and the training and experience of other law enforcement officers with whom I

have had discussions, there are certain characteristics common to individuals involved in the

receipt and collection of child pornography:

    (a)    Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

    (b)    Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.  Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification.  Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

    (c)    Individuals who have a sexual interest in children or images of children almost always possess and maintain their "hard copies" of child

31

pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

(d)     Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the individual to view the collection, which is valued highly.

(e)     Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

(f)     Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

32

## CONCLUSION

57.  Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of such criminal offenses may be located on the Western Digital hard drive, in violation of 18 U.S.C. Sections 2252 and 2252A.

58.  I, therefore, respectfully request that attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN before me this 5th day of December, 2008

UNITED STATES MAGISTRATE JUDGE

33

**ATTACHMENT A**

DESCRIPTION OF LOCATION TO BE SEARCHED

One (1) single Western Digital WD1200 120GB Hard Drive,

Model # WD1200JB-75CRAO, Serial # WMA8C3553998

34

**ATTACHMENT B**

DESCRIPTION OF ITEMS TO BE SEARCHED FOR AND SEIZED

1.      Computer software, computer passwords, and data security devices that may be, or are used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography or child erotica.

2.      Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, including, but not limited to, P2P software.

3.      Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, or distribution of child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4.      In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of

35

minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

5.      Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by the operator of ██████████)cox.net" by use of the computer or by other means for the purpose of distributing or receiving child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

6.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

8.      Any and all notes, documents, records, or correspondence, in any format

36

or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to whose with an interest in child pornography.

9.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

10.      Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

11.      Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

12.      Any and all visual depictions of minors.

13.      Any and all address books, mailing lists, supplier lists, mailing address

37

labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

14.     Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the RESIDENCE described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

15.     Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

38

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

IN THE MATTER OF THE SEARCH OF      :
One (1) single Western Digital 120GB Hard Drive,      :    MAGISTRATE NO. 08-
Model# WD1200JB-75CRAO,      :
Serial #WMA8C3553998      :    **UNDER SEAL**
     :
     :
     :

## MOTION TO SEAL APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT, SEARCH WARRANT, AND SEARCH WARRANT RETURN

NOW INTO COURT comes the undersigned Trial Attorney who represents that:

The United States moves at this time to seal the above captioned application and affidavit for search warrant, the search warrant, and the search warrant return for the following reason:

Publication of this application and affidavit for search warrant, the search warrant, and the search warrant return at this time would prejudice an ongoing federal criminal investigation.

WHEREFORE, the United States prays that the application and affidavit for search warrant, the search warrant, the search warrant return, and this Motion and Order to Seal be granted.

UNITED STATES OF AMERICA, by

ANDREW G. OOSTERBAAN
SECTION CHIEF
CHILD EXPLOITATION AND
OBSCENITY SECTION
U.S. DEPARTMENT OF JUSTICE

Alecia Riewerts
Trial Attorney
1400 New York Avenue NW, Suite 600
Washington, DC 20530
Telephone: (202) 353-3749
Fax: (202) 514-1793

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

IN THE MATTER OF THE SEARCH OF          :
One (1) single Western Digital 120GB Hard Drive,    :    MAGISTRATE NO. 08- 79-DLD
Model# WD1200JB-75CRAO,                 :
Serial #WMA8C3553998                    :    **UNDER SEAL**
                                        :
                                        :

## <u>O R D E R</u>

Considering the foregoing,

IT IS HEREBY ORDERED, that the application and affidavit in support of a search

warrant, the search warrant, and the search warrant return in this matter be sealed until

further orders from the Court,

IT IS FURTHER ORDERED that this Motion and Order be sealed; however, nothing

in this Order shall preclude transmission of this Order to the United States Department of

Justice or representatives of the Federal Bureau of Investigation or representatives of

Immigration and Customs Enforcement.

Baton Rouge, Louisiana, this 5 day of December, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

AO 93 (Rev. 5/85) Search Warrant

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

In the Matter of the Search of
One (1) single Western Digital 120 GB Hard Drive
Model # WD1200JB-75CRAO,
Serial #WMA8C3553998



### SEARCH WARRANT

CASE NUMBER: 08- **79-DLD**

TO: _____ THOMAS TEDDER _____ and any Authorized Officer of the United States

Affidavit having been made before me by _____ THOMAS TEDDER _____ who has reason to believe

that ☐ on the person of or ☒ on the property or premises contained in the One (1) single Western Digital 120 GB

Hard Drive,  Model # WD1200JB-75CRAO, Serial #WMA8C3553998 turned over to the FBI.

in the _____ Middle _____ District of _____ Louisiana _____ there is now concealed a
certain person or property, namely (describe the person or property)

SEE ATTACHMENT B

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or
property so described is now concealed on the person or premises above-described and establish grounds for the
issuance of this warrant.
YOU ARE HEREBY COMMANDED to search on or before _____ December 15, 2008 _____
                                                                                                                                Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant
and making the search (in the daytime — 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find
reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy
of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property
seized and promptly return this warrant to _____ Docia L. Dalby _____ as required by law.
                                                                                U. S. Judge or Magistrate

December 5, 2008  @ 3 pm                                Baton Rouge, Louisiana
_____            at           _____
Date and Time Issued                                              City and State

Docia L. Dalby, U.S. Magistrate Judge
_____                          _____
Name and Title of Judicial Officer                          Signature of Judicial Officer

AO 93 (Rev. 5/85) Search Warrant

## RETURN

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
|  |  |  |

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

## CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

| _____ | _____ |
|---|---|
| U.S. Judge or Magistrate | Date |

# ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEARCHED FOR AND SEIZED

1.       Computer software, computer passwords, and data security devices that may be, or are used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography or child erotica.

2.       Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, including, but not limited to, P2P software.

3.       Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, or distribution of child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4.       In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of

35

minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

5.      Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by the operator of ████████cox.net" by use of the computer or by other means for the purpose of distributing or receiving child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

6.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

8.      Any and all notes, documents, records, or correspondence, in any format

36

or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to whose with an interest in child pornography.

9.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

10.      Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

11.      Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

12.      Any and all visual depictions of minors.

13.      Any and all address books, mailing lists, supplier lists, mailing address

labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct,  as defined in 18 U.S.C. § 2256(2).

14.     Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the RESIDENCE described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

15.     Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

# UNITED STATES  DISTRICT COURT

# MIDDLE DISTRICT  OF LOUISIANA

IN THE MATTER OF THE SEARCH OF      :
One (1) single Western Digital 120GB Hard Drive,  :  MAGISTRATE NO. 08-79-DLD
Model# WD1200JB-75CRAO,          :
Serial #WMA8C3553998            :  **UNDER SEAL**
                                    :

## <u>MOTION TO UNSEAL</u>

NOW INTO COURT comes the undersigned Trial Attorney who represents that:

The United States moves at this time to unseal the entire above-captioned matter, including the application and affidavit for the search warrant, the search warrant, the search warrant return and the unsealing Order for the following reason:

On December 5, 2008, execution of the aforementioned search warrant for the above-referenced hard drive was authorized by Magistrate Judge Docia L. Dalby.  The above-referenced hard drive had been obtained from George William Jarman.  On April 21, 2011, a grand jury in the Middle District of Louisiana indicted George William Jarman on one (1) count of receipt and attempted receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1) and one (1) count of possession and attempted possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).  The United States seeks to unseal the entire matter, including the application and affidavit for the search warrant, the search warrant, the search warrant return and the unsealing Order to provide them to Defendant George William Jarman and his newly retained counsel in discovery in Case No. 11-38-JJB-CN.

//

//

//

//

//

//

WHEREFORE, the United States prays that this Motion and Order to Unseal be granted.

UNITED STATES OF AMERICA, by

ANDREW G. OOSTERBAAN
SECTION CHIEF
CHILD EXPLOITATION AND
OBSCENITY SECTION
U.S. DEPARTMENT OF JUSTICE

Alecia Riewerts Wolak
Trial Attorney
1400 New York Avenue NW, Suite 600
Washington, DC 20530
Telephone: (202) 353-3749
Fax: (202) 514-1793

## UNITED STATES  DISTRICT COURT

## MIDDLE DISTRICT  OF LOUISIANA

IN THE MATTER OF THE SEARCH OF    :
One (1) single Western Digital 120GB Hard Drive, : MAGISTRATE NO. 08-79-DLD
Model# WD1200JB-75CRAO,     :
Serial #WMA8C3553998      : **UNDER SEAL**
             :

## O R D E R

Considering the foregoing,

IT IS HEREBY ORDERED, that the Clerk of the Court for the Middle District of Louisiana unseal the entire above-captioned matter, including the application and affidavit for the search warrant, the search warrant, the search warrant return and the unsealing Order.

Baton Rouge, Louisiana, this ____ day of _____, 2011.


_____
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

IN THE MATTER OF THE SEARCH OF          :
One (1) single Western Digital 120GB Hard Drive,     :     MAGISTRATE NO. 08-79-DLD
Model# WD1200JB-75CRAO,                  :
Serial #WMA8C3553998                     :     **UNDER SEAL**
                                         :
                                         :

## O R D E R

Considering the foregoing,

IT IS HEREBY ORDERED, that the Clerk of the Court for the Middle District of

Louisiana unseal the entire above-captioned matter, including the application and affidavit

for the search warrant, the search warrant, the search warrant return and the unsealing Order.

Baton Rouge, Louisiana, this 28th day of April , 2011.

_____
UNITED STATES MAGISTRATE JUDGE