UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

GEORGE WILLIAM JARMAN

CRIMINAL ACTION

11-38-JJB-DLD

## **RULING ON DEFENDANT'S MOTION TO COMPEL PRODUCTION OF MIRROR IMAGE HARD DRIVES**

Before the Court is a motion by the Defendant to compel production of mirror images of the hard drives in evidence in the criminal prosecution against him. (Doc. 45). The parties have briefed the issue. The Court heard oral argument on this and two other discovery related motions by Defendant (docs. 29 and 27). These latter two motions were mooted after the parties agreed certain information would be produced.[1] The Court took the motion to compel mirror image drives under advisement. The Government filed a supplemental response in opposition. (Doc. 52). For the following reasons, the Court GRANTS the Motion to Compel Production of Mirror Image Hard Drives.

On April 21, 2011, the Defendant was charged by grand jury indictment with one count of receiving and attempting to receive child pornography in violation of 18 U.S.C. 2252(a)(2) and one count of possessing and attempting to possess child pornography in violation of 18 U.S.C. 2252(a)(4)(B). The primary

---

[1] Specifically, in the Motion for Bill of Particulars, the Government agreed to turn over an exhibit list to the defense by January 1, 2012. In another Motion to Compel Discovery, the government agreed to turn over three items upon which an affidavit was partially based.

evidence is images and videos found on three hard drives that were seized pursuant to search warrants executed in December, 2008.[2] Defendant has retained a certified forensic computer expert to assist in his defense. This expert, Ms. Tami Loehrs, lives and works in Arizona. Defendant claims that the current procedures in place for her access to the evidence are not adequate to allow her to effectively assist in his defense. He is contesting a very specific provision from a federal statute that requires child pornography to remain in custody of the federal government.

> Under the Federal Rule of Criminal Procedure 16(a)(1)(E):
>
> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> **(i)** the item is material to preparing the defense;
>
> **(ii)** the government intends to use the item in its case-in-chief at trial; or
>
> **(iii)** the item was obtained from or belongs to the defendant.

On its own, this provision would clearly grant Defendant the right to copy the hard drives seized in that they would qualify as "data." In 2006, however, Congress passed the Adam Walsh Child Protection and Safety Act ("Adam Walsh Act"). This act provides in part:

---

[2] These warrants were based on information collected in part from different online payment services, child pornography sites, and even law enforcement officials in Belarus.

> **(m) Prohibition on reproduction of child pornography.**--
>
> **(1)** In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court.
>
> **(2)(A)** Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.
>
> **(B)** For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial.

This provision clearly expresses Congress' intent to override the requirement of Rule 16(a)(1)(E) for criminal defendants to be able to copy evidence such as data when such data constitutes child pornography so long as the Government makes the property or material "reasonably available" to the defendant and his expert. This requirement is satisfied when the Government provides "ample opportunity" for inspection, etc.  Thus, the Court must determine whether the access to the hard drives the Government has provided or offered to provide affords Defendant's expert ample opportunity to inspect and examine the hard drives.

3

There is no test for determining whether "ample opportunity" has been granted by the Government, however, courts have concluded this opportunity is "akin to the due process requirement that a criminal defendant be afforded fair opportunity to defend against the State's accusations and be free from arbitrary and disproportionate restrictions on his right to confront witnesses and present evidence." *United States v. Doane*, 501 F.Supp. 2d 897, 901 (E.D. KY 2007) *citing United States v. O'Rourke*, 470 F.Supp 2d 1049 (D. Ariz. 2007). Therefore, due process-level access to the hard drives is required at a Government facility or else the defense must be given a copy of the drives. *Id.*

There are only two district court cases in which the court has ordered production of a mirror-image hard drive. In *United States v. Knellinger*, the defendant sought to have a mirror image of a seized hard drive produced. 471 F.Supp. 2d 640 (E.D. Va. 2007). The court noted that whether or not ample opportunity for inspection is granted is a factual question to be resolved on a case by case basis. *Id.* at 646. In *Knellinger*, the defendant was pursuing a "virtual child" defense, in which he sought to prove that the images he was accused of possessing were not in fact of real children. At an evidentiary hearing on the matter, the defendant put on four witnesses, two of whom were forensic computer experts. One testified that in order to take the case under the strictures of having to work out of a government facility, he would charge $540,000, four times his normal rate. This fee did not include equipment transportation costs, which he estimated would take one week and a 20-foot by 10-foot box truck to

4

move. And while he said he could do this, he felt the process of moving the equipment—and the potential damage it could cause—would so compromise his work that "he wouldn't be able to service the client or the attorney effectively." *Id.* at 647 (internal quotation omitted.). The second expert testified he would not take the job "because of the difficulty associated with moving equipment to, and adequately performing his analytical work in, a Government facility." *Id.* at 648. The court found that, on the record before it, technical expert witnesses were a necessary component of preparing a potentially viable defense. Because the Government did not put on evidence, and because it found the defendant's witnesses credible, it accepted their testimony as true and concluded the government had not provided ample opportunity for examination of the evidence. The court defined "examination" as "to test by an appropriate method." *Id.* at 649, *citing Webster's Third New International Dictionary*. Therefore, the court ordered a mirror image of the hard drive produced to the defense.

The Government claims *Knellinger* applies only when: (1) the virtual child defense is being used; (2) transporting equipment is prohibitively expensive and prevents experts from being able to perform the necessary work; and (3) the government-provided equipment is insufficient to satisfy the expert's needs. Defendant did not file a reply to the Government's opposition brief.[3] Regardless, the Court finds *Knellinger* should apply to more than just virtual child defense

---

[3] There is a docket entry titled "Reply to Response to Motion to Compel Mirror Hard Drives," but the attached document is a reply related to a different Motion to Compel (doc. 37).

cases. The *Knellinger* court did not limit its ruling to just that defense and the reasoning it used in the case leads to the conclusion that it felt it was the complexity of the defense—not the specific defense—that merited production. As for the second proposed element, the Court finds the second half to be the key, circumstances that prevent the expert from being able to perform the necessary work. Transportation of equipment was the trigger for this inability in *Knellinger*, but the Court sees no reason why there could not be other things that trigger this inability. The Court sees no problem with the Government's third prong of *Knellinger*. Therefore, the Court reads *Knellinger* to hold that production should be compelled where: (1) case is complex (2) the protocol prevents experts from being able to perform the necessary work and (3) the government-provided equipment is insufficient to satisfy the expert's needs.

The only other district court case that has ordered production of mirror image drives is *United States v. Winslow*, an unreported case from Alaska. 07-CR-00072-TMB-DMS (D. Alaska 2008). In *Winslow*, authorities seized a computer allegedly containing images of child pornography. Also on the computer was evidence of online chats and emails between the defendant and an undercover officer which the government argued were evidence of attempted aggravated sexual abuse of a minor. The defendant made similar allegations about access as the Defendant in the instant case. The magistrate judge found that the lack of phone and Internet access as well as the surveillance of the

examination room the expert was to work in,[4] constituted a violation of the defendant's Sixth Amendment rights and therefore ordered production. *Id.* at 23. The Court agrees with the Government that this is a narrow holding. The Court notes, however, that the defense expert had testified that since the passage of the Adam Walsh Act, he "believed that he and his staff did not do an adequate job when testifying in court because of the access limitations." *Id.* at 8.

The Court is persuaded by the *Knellinger* court's reasoning and adopts it as a touchstone for the instant case. The Court further notes the numerous cases the Government has cited in which the district courts have refused to compel production. The Government has pointed to none involving the same level of complexity as the instant case.

Defendant cites the following difficulties his expert faces in her examination as evidence that he is not being given ample opportunity to inspect the evidence: (1) Ms. Loehrs must travel from Arizona to Baton Rouge; (2) the Government requires prior approval before access is granted and has prohibited access on Fridays and weekends; (3) the Government has established a protocol she must follow; (4) she is given limited time to conduct her exam; (5) she is unable to fully use her own equipment; and (6) she is unable to confer with the defense team in a private environment.  (Doc. 45-1 at 6).

---

[4] The surveillance did not include audio and a stipulation between the parties provided the cameras could not be pointed at the computer screens the expert was working on.

The Government counters each point as follows: (1) that it is not its fault Defendant hired an expert who lives in Arizona and points to cases where distance is rejected as a reason for granting such relief (doc. 46 at 5); (2) the prior approval is really simply a requirement it be notified of who is coming for security purposes and that Friday access is no longer denied;[5] (3) the protocols do not interfere with her work; in fact two of them are the same as Ms. Loehrs's own requirements and the third (that she not connect any computer to the Internet) was never complained of to the Government; (4) Defendant cannot complain about time limitations because Ms. Loehrs has only visited one time for a period of two days; (5) Ms. Loehrs was allowed to use her own equipment and to the extent she had to use some government equipment, Defendant does not indicate how this impacted Ms. Loehrs's ability to conduct her examination; and (6) there is a private conference room which Defendant may use without limitation and may store equipment there if necessary. (Doc. 46 at 5-7).

At the hearing on this matter, Defendant presented evidence from his expert, Ms. Loehrs. Ms. Loehrs has considerable experience in the field and testified that she knows of only a handful of other forensic computer experts of her training and skill. The Government did not challenge her credentials, skills, or that she is one of the foremost members of the field. The Court accepts this as true.

---

[5] At least the Court interprets the Government's response to mean Fridays are no longer excluded. The Government's opposition refers to dropping restrictions that the case agent be present when Ms. Loehrs visits. (Doc. 46 at 5-6). The Court assumes this means there is unrestricted Monday through Friday access during business hours, 9 a.m. until 5 p.m.

Ms. Loehrs testified that she has performed a preliminary exam of the hard drives at the FBI offices in Baton Rouge. The purpose of this preliminary exam was to determine whether or not the case contained what she termed complex issues or not. She gave an example of a simple case as being one with a computer with a single user and images stored in common locations. The factors she cited in determining the case was complex included the existence of multiple user accounts, evidence that cameras and other devices had been plugged into the computer, the existence of Instant Messaging (IM) accounts belonging to persons other than the Defendant, and the presence of viruses and so-called Trojans (a form of malware)[6] on the computer. She also testified that initially she located only two pieces of child pornography on the hard drives, one of which would not open. Further investigation showed almost all of the 1,900 images Defendant is alleged to have possessed and received are found in two locations, the thumbs.db folder[7] and a Limewire incomplete folder.[8] She testified that each of these presents significant challenges to her investigation. Ms. Loehrs testified that this is one of the more complex cases she has worked on.

---

[6] These viruses and Trojans are potentially capable of allowing outsiders to use a person's computer without knowledge.

[7] In the case of the thumbs.db folder, Ms. Loehrs explained that for every image or file downloaded on a computer, a file is created in the thumbs.db folder. This is a remnant of the original that stays in the folder even if the original is deleted. Unlike the original file, however, none of the identifying data accompanies it. This requires more work to determine the origin of each file.

[8] Limewire is a peer-to-peer file sharing software program. It allows users to trade files directly. The incomplete folder is created by the software. Ms. Loehrs explained that the downloading can be interrupted by a network connection loss, among other things. It is common when downloading files for there to be other files attached without the downloader's knowledge. Further, viruses and Trojans are commonly attached to such files.

The Government did not put on evidence as to the complexity of the case and did not challenge her assessment on cross. Ms. Loehrs was accepted as an expert in the field and the Court finds her testimony credible. The Court finds that the facts of this case make it a complex case from a forensic perspective.

Ms. Loehrs testified that the process of conducting a complete exam in a complex case can take hundreds of hours and involves what the Court understands to be a series of searches of the hard drive, which she called processes. Basically, she connects her computer to the hard drive (or mirror image) and performs a search. While starting the search takes minutes, the search itself can take days. As these processes are prone to crashing, it is best to monitor the search and to not do anything else on that computer while it is running the search. When the search is over, she looks at the results and if there is any relevant evidence, she runs another search of that evidence. And so on. The advantage of doing the work in her lab is that she and her staff are able to run and monitor multiple processes at the same time. Further, they can work on multiple cases at the same time, essentially allowing for economies of scale. Ms. Loehrs explained that what she is trying to establish for each image are the circumstances surrounding its arrival on the hard drive: who was logged in at the time, when was it created, and where did it come from. When asked if she could do a complete and thorough exam of the hard drives in the FBI building in Baton Rouge, Ms. Loehrs replied, "Absolutely not . . . it's a process that involves constant interaction with the computer over weeks and months." On cross-

examination, after establishing that Ms. Loehrs had never been granted a mirror image hard drive in a federal case since the enactment of the Adam Walsh Act, the Government asked if she was able to do her job in those other cases. Answer: "No, I was not."[9]

The Court is greatly concerned by this and finds that by not being able to work in her laboratory, Defendant's expert would not be able to perform the necessary work to assist in the defense. As this would amount to a disproportionate restriction on the Defendant's right to present evidence at his trial, it cannot be considered due process-level access. Therefore, the Court is ordering a mirror image copy of the hard drives in question to be turned over to the defense for examination by their expert.

If this were what Ms. Loehrs calls a "simple" case, one in which a single-user computer with files stored in readily accessible places, the Court would rule differently. For while the Defendant is entitled to ample opportunity to examine the evidence, mere inconvenience would not be enough to thwart this. However, Ms. Loehrs testified she would not be able to do a complete and thorough report under the present circumstances. "I guess if I didn't have a job and the FBI could let me stay in their offices for two months . . . but that's just not realistic, no one could do that." The Court finds this is not mere inconvenience; it is an impediment that leads her to be unable to do her work.

---

[9] Ms. Loehrs mentioned that this issue went to an appellate court in one of her cases, *United States v. Solon*, 596 F.3d 1206 (10th Cir. 2010). The Court has read this case and agrees with the Government (doc. 52) that this case is inapplicable to the instant case.

The Court notes that the Adam Walsh Act includes provisions intending to protect children and child victims from having to testify directly in court and otherwise having their identities revealed.  This purpose of protecting child victims can be served in this case through a protective order from the Court.  Ms. Loehrs testified that her lab in Arizona contains the following safety features: passcode locks at the front door, security cameras throughout the facility, storage safe for evidence, no connection between the examination computers and the Internet, alarm system with motion sensors, fixed pane windows that do not allow those on the outside to see inside.  Further, the Court notes that the biggest threat to the security of the alleged child pornography came from the forensic toolkit (FTK) report the Government gave to Ms. Loehrs in lieu of a mirror image. She testified this report inadvertently contained contraband images, thereby violating § 3509(m) itself.  The Government has presented no evidence to lead the Court to believe other than that Ms. Loehrs would be able to protect the alleged child pornography contained on the hard drives while it is in her custody.

## **CONCLUSION**

As the Court finds the Government has not made the hard drives seized from Defendant reasonably available to the Defendant and his expert, the Court orders the Government to produce a mirror image copy of each of the seized

hard drives.  The parties are directed to submit a proposed court protective order to govern the process.

Signed in Baton Rouge, Louisiana, on December 6, 2011.

**JUDGE JAMES J. BRADY**  
**UNITED STATES DISTRICT COURT**  
**MIDDLE DISTRICT OF LOUISIANA**