**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                    **CRIMINAL NO. 11-38-JJB-DLD**

**VERSUS**

**GEORGE WILLIAM JARMAN**

**GOVERNMENT'S POST- HEARING BRIEF**

COMES NOW, the United States of America, by and through its attorneys, and files this brief following a hearing on the defendant's motion to suppress evidence.

Defendant Jarman filed a motion to suppress evidence seized relative to two search and seizure warrants executed on December 5, 2008 and December 8, 2008, in Baton Rouge, Louisiana. These warrants respectively authorized the search of a computer hard drive that was provided to law enforcement by a private citizen who reported viewing child pornography on the drive and the defendant's residence for evidence related to an ongoing investigation of child pornography offenses. The Court held a hearing on defendant's motion on April 2-3, 2014.

The Court should deny the defendant's motion to suppress. As discussed in detail below, the initial acquisition of a computer hard drive by a private citizen and subsequent provision of that drive to law enforcement, concurrent with a report of a crime, does not implicate the Fourth Amendment. Any delay in securing a warrant to search the hard drive was reasonable in light of the defendant's diminished possessory interest in that hard drive. Furthermore, law enforcement acted in good faith at all times in obtaining and executing valid search warrants for the hard drive and the defendant's residence, which were amply supported by probable cause.

1

I.      **FACTS**

On November 26, 2007, Special Agent ("SA") Larry Jones of the Federal Bureau of Investigation ("FBI") received a telephone call from the owner of a computer repair store, Jason Collins ("Collins"). Apr. 2, 2014, Hrg. Tr., Vol. I, 7-8.[1] During this brief telephone interview, Collins informed SA Jones that his employee, Charlie Wilson ("Wilson"), noticed file names indicative of child pornography as he performed a data transfer from an old computer to a newly purchased computer at home of one of his customers. Tr. Vol. I, 12. Collins directed Wilson to bring the original hard drive to him so that he could review it. *Id.* Once Wilson brought Collins the hard drive, Collins viewed one video file which depicted an adult male engaging in anal sex with a prepubescent male child. *Id.* at 13. SA Jones documented this interview in a FBI form 302 and prepared an electronic communication which recommended that an investigation be opened and assigned to FBI Special Agent Thomas Tedder. Tr. Vol. I, 21-22; Ex. 1.

In late November of 2007, SA Tedder was assigned to this investigation. Tr. Vol. I, 45.[2] SA Tedder attempted to contact Collins several times before he was able to get in touch with him and set up an appointment for Collins to come to the FBI Field Office. *Id.* On January 24, 2008, SA Tedder interviewed Collins at the FBI Office. *Id.* Collins told SA Tedder that he had sent an

---

[1] SA Jones testified that he has been employed as a Special Agent with the FBI since 1987, has investigated numerous types of crimes with the agency, and has worked since 2006 as a computer forensic examiner. Tr. Vol. I, 6-7.

[2] SA Tedder testified that he has been employed by the FBI since 1997 and a Special Agent with the FBI since 2001. Tr. Vol. 1, 41. He described his training and experience investigating child exploitation matters including the production, receipt, possession and distribution of child pornography. *Id.* at 42. He testified that between 2003 and 2012, he was primarily responsible for the investigation of such cases. *Id.* at 44. He has participated in the investigation of over 100 child exploitation cases and applied for or assisted in the execution of more than 30 search warrants in such investigations. *Id.* at 43-44.

employee to do a computer installation at a residence, and that during the process of moving files from the old computer to the new computer hard drive, the employee had seen file names indicative of child pornography. *Id.* at 49-50. The employee contacted Collins, who instructed him to finish the installation and to bring the old hard drive back to his office. *Id.* Upon receiving the hard drive, Collins viewed one image which depicted an adult sodomizing a prepubescent male. *Id.* Collins identified the customer and owner of the hard drive as the defendant, Bill Jarman, and gave SA Tedder the hard drive. *Id.* at 52-54. SA Tedder documented the interview in a FBI form 302. Ex. 2.

During the course of his investigation, SA Tedder learned that the defendant was a target of two separate investigations being conducted by the United States Immigration and Customs Enforcement ("ICE") Tr. Vol I, 72-74. The first ICE investigation, which began in October 2005, focused on a website, Illegal CP.[3] This website's banner page advertised to customers, "Now you are a few minutes away from the best child porn site on the net! If you join this site, you will get tons of uncensored forbidden pics, forbidden stories, and of course, many videos." Tr. Vol. I, 80-82. There were also images depicting child pornography on this banner page. *Id.* Illegal CP offered access to images and videos depicting child pornography to individuals who purchased subscriptions using their credit cards. *Id.* During the course of this investigation, ICE Agents obtained credit card information and email addresses of the individuals who purchased access to this website. *Id.* at 83-84. In connection with this investigation, ICE Agents obtained and provided the defendant's name, and an email address, Bill.Jarman@cox.net, to SA Tedder as one of the individuals who purchased access to the Illegal CP website. *Id.* The second ICE

---

[3] SA Tedder testified that the term "CP" denotes child pornography. Tr. Vol. I, 81.

investigation revealed that on seven separate occasions, between October of 2006 and January 2007, the defendant purchased access to three separate websites that provided subscribers with access to child pornography.[4]  Tr. Vol. I, 86-89. Based upon this information, warrants to search the hard drive and the defendant's home were obtained by SA Tedder on December 5, 2008.  Tr. Vol. I, 98.

Copies of the warrants, applications, affidavits and returns were received as government Exhibits 4 and 5 at the hearing.  The warrant affidavits articulate in great detail the three separate investigations that supported probable cause to search the hard drive and the defendant's home for evidence related to child pornography.  For instance, the affidavits describe the two separate federal investigations conducted by ICE which revealed the defendant's history of purchasing subscriptions to paid websites advertising child pornography.  *Id*. ¶¶ 27-48.  The affidavits also detail the report by Collins to the FBI about his observation of child pornography on the hard drive belonging to the defendant.  *Id.* ¶¶ 49-52.  The affidavits further described SA Tedder's training and experience, *Id.* ¶ 1; articulated the crimes under investigation, *Id.* ¶¶ 4-5; defined terms relevant to the investigation, *Id.* ¶¶ 6-17; provided background regarding the forensic examination of computers, *Id.* ¶¶ 18-22; specified that a "taint team" would be employed to search the home and the hard drive and described how potentially privileged materials would be accounted for, *Id.* ¶ 23; provided background information regarding how computers are utilized in child pornography offenses;  *Id.* ¶¶ 24-26; and articulated characteristics pertinent to individuals who receive and possess child pornography, Ex. 4 ¶ 56; Ex. 5 ¶ 57.

---

[4] SA Tedder testified that ICE Agents viewed the content of each of these three websites, and each website contained visual depictions of prepubescent males and females engaged in lewd and lascivious behavior and sexual intercourse with adults.  Tr. Vol. I, 89.

## II.     ARGUMENT

### A.  The Fourth Amendment Was Not Implicated When the Government Accepted the Hard Drive After a Private Search

Jason Collins acted as a private party when, prior to contacting law enforcement agents, he viewed an image of child pornography on the defendant's computer hard drive.  Searches and seizures are not subject to Fourth Amendment analysis unless a private party was acting as an agent of, or with the participation of, a government official.  *United States v. Jacobsen,* 466 U.S. 109, 113 (1984).  The Fifth Circuit employs a two-part test for determining whether a private party constitutes a government actor under the Fourth Amendment: "(1) whether the government knew or acquiesced in the intrusive conduct and (2) whether the private party intended to assist law enforcement efforts or to further his own ends."  *United States v. Paige*, 136 F.3d 1012, 1018 (5th Cir. 1998).

The government had no knowledge that the defendant hired Jason Collins's company to complete a computer installation at his residence until Collins contacted the FBI in late November of 2007.  Tr. Vol. I. at 8.  Therefore, the Fourth Amendment is inapplicable to both Collins's search of the hard drive and his subsequent description of the image depicting child pornography to law enforcement.  *See United States v. Grimes*, 244 F.3d 375 (5th Cir. 2001)(computer technicians, acting as private citizens, were not considered government agents when they discovered images depicting child pornography during repairs to the defendant's computer and subsequently alerted law enforcement.); *United States v. Hall*, 142 F.3d 988 (7th Cir. 1998)( computer repair employee's viewing files on defendant's computer a private search rendering Fourth Amendment inapplicable).

5

When Collins contacted the FBI on November 26, 2007, and spoke with Special Agent Jones, Jones did not instruct Collins to do any further searching on that computer hard drive. Agent Jones merely told Collins to keep the hard drive and informed him that someone from the FBI would be contacting him to obtain additional information.   *Id.* at 14.   The Fourth Amendment is not implicated "when a private person voluntarily turns over property belonging to another and the government's direct or indirect participation is nonexistent or minor."  *United States v. Benoit*, 713 F.3d 1, 10-11 (10th Cir. 2013) (citation and internal quotation marks omitted) (noting that "[e]very instance in which a private party turns contraband over to the police features some form of passive acceptance from an officer"); *see also United States v. Sanders*, 592 F.2d 788, 792 (5th Cir. 1979) (citations omitted) (government's acceptance of sexually explicit films from private party following private search was "not a seizure within the meaning of the Fourth Amendment"), *rev'd on other grounds sub nom. Walter v. United States*, 447 U.S. 649 (1980).   The subsequent involvement of law enforcement, *after* Collins retained and searched the hard drive, does not retroactively transform Collins into a government agent at the time he took those actions. *See United States v. Jarrett*, 338 F.3d 339 (4th Cir. 2003).

### B.  Any Delay in Seeking the Search Warrant for the Hard Drive Was Not Unreasonable

Although there was a delay in obtaining the warrant to search the hard drive, this delay was not constitutionally unreasonable based on the facts of this case.   The reasonableness of a delay is determined in light of all the facts and circumstances, and on a case-by-case basis. *United States v. Miller*, 565 F.3d 1347, 1350 (11th Cir. 2009).   In determining the reasonableness of the government's delay in seeking a search warrant after a valid seizure, the Court must

6

"balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *See United States v. Place*, 462 U.S. 696, 703 (1983). Numerous factors are pertinent to that analysis, to include the significance of the interference with the person's possessory interest, the duration of delay, whether the person consented to the seizure, and the government's legitimate interest in holding the property as evidence. *United States v. Laist*, 702 F.3d 608, 613-14 (11th Cir. 2012). Other factors include whether the police diligently pursue[d] their investigation; the nature and complexity of the investigation; and whether circumstances necessitated the diversion of law enforcement personnel to another case. *Id.* at 614. Here, any possessory interest the defendant had in the hard drive was significantly diminished, if not eliminated, because the drive contained contraband and he retained a copy of the data and information contained on the drive on a new computer at his residence.[5]

Probable cause existed to seize the hard drive provided by Jason Collins to the FBI because there was a fair probability that it contained contraband. On January 24, 2008, Collins provided SA Tedder with a detailed description of an image file he observed on the defendant's hard drive. Apr. 2, 2014, Hrg. Tr. Vol. I, 50-51. Courts have routinely determined that probable cause exists where a trained and experienced law enforcement officer summarizes a witness's account of having seen what appears to be child pornography on a computer, even without

---

[5] Although it would be appropriate for the Court to consider, *see Laist*, 702 F.3d at 614, the government is not contending that any delay was justified due SA Tedder's case load or the size of his office/geographic territory. Nor is the government contending that any delay was reasonable on account of the recusal by the U.S. Attorney's Office for the Middle District of Louisiana or the need to establish a "taint team" in conjunction with the searches due to the defendant being a practicing attorney.

having viewed the material himself.  *See, e.g., United States v. Grosenheider*, 200 F.3d 321, 327-28 (5th Cir. 2000) (upholding search warrant obtained "by relying solely on the statements by the [computer repair shop] employees to [a police officer]" about their observations of "two to five images" of suspected child pornography contained on defendant's computer (emphasis in original)); *United States v. Budd*, 549 F.3d 1140, 1147 (7th Cir. 2008) (upholding finding of probable cause based on repair shop owner's report of seeing what affiant assumed to be child pornography on defendant's computer); *United States v. Grant*, 490 F.3d 627, 631-32 (8th Cir. 2007) (officer could rely on report of computer repairman to aver that images probably met legal definition of "child pornography").

The fact that there was probable cause to believe the drive contained contraband significantly reduces the defendant's possessory interest in it, and, at the same time, greatly heightens law enforcement's interest in not returning it.  *See United States v. Howe*, 545 Fed. Appx. 64 (2d Cir. Nov. 25, 2013)(Summary Order).  In *Howe*, thirteen months passed before law enforcement obtained a search warrant for a hard drive that had been seized.  *Id*. at 65.  In determining the reasonableness of the delay, the Court noted that the defendant's possessory interest in the laptop was diminished by the fact that child pornography had been seen on it.  *Id.* Additionally, the court noted that this factor provided the government with a "strong interest in retaining the laptop and not returning it."  *Id.*  While recognizing that the delay in seeking a search warrant was lengthy, the court in *Howe* did not find it unreasonable given the facts of the case.  As was the case in *Howe*, the defendant's possessory interest in the hard drive was diminished, and law enforcement's interest in not returning it heightened, because Collins observed child pornography on the drive.

The defendant's possessory interest in the hard drive was further diminished (if not entirely eliminated) because, at his instruction, Mammoth computing transferred his personal data from the drive to the new computer he purchased. *See Laist*, 702 F.3d at 616 ("Since the possessory interest in a computer derives from its highly personal contents, the fact that Laist had a real opportunity to copy or remove personal documents reduces the significance of his interest."). Wilson testified that he connected the defendant's old hard drive to the defendant's new computer using a USB adaptor and transferred the defendant's user folder from the old computer to the new one. Apr. 3, 2014, Hrg. Tr. Vol. II, 57, 59. The defendant accordingly retained access to the files and data that he created even after the old hard drive was provided to the FBI.[6] Given that the defendant retained the data and information that he had specifically requested be transferred from the hard drive to his new computer, and that there existed contraband on the hard drive, any possessory interest retained by the defendant is so significantly diminished that even a 13-month delay, found not to be unreasonable on similar facts in *Howe*, was not unreasonable in this case.

C. **Probable Cause Existed to Search the Defendant's Hard Drive and Home**

Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity. *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004) (quoting *United States v. Daniel*, 982 F.2d 146, 151 (5th Cir. 1993)). As described in the search warrants, on October 29, 2006, the defendant purchased a subscription to a website named Home

---

[6] Charlie Wilson testified that the user folder, including all user accounts on the defendant's computer, would have been transferred to the defendant's new computer. He testified that "program files", which may not have been transferred, are background files that a regular user of a computer would not typically utilize or save items in. Tr. Vol. I, 71.

Collection, allowing him access for 30 days for $79.95.  Tr. Vol. I, 86-87.  Between October of 2006 and January of 2007, the defendant made six additional purchases on three separate websites that all provided subscribers with access to images depicting children engaging in sexually explicit conduct.  Tr. Vol. I, 89.  Courts have repeatedly held that evidence of a subscription to a child pornography site provides sufficient probable cause to search the home of the subscriber.  *See, e.g.*, *United States v. Froman*, 355 F.3d 882, 890–91 (5th Cir. 2004); *see also United States v. Wagers,* 452 F.3d 534, 540 (6th Cir. 2006) (noting that "evidence that a person has visited or subscribed to websites containing child pornography supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material" (citing *United States v. Martin,* 426 F.3d 68, 77 (2d Cir. 2005), and *Froman*, 355 F.3d at 890)); *United States v. Gourde*, 440 F.3d 1065, 1071 (9th Cir. 2006) (en banc) ("Having paid for multi-month access to a child pornography site, [the defendant] was also stuck with the near certainty that his computer would contain evidence of a crime that he received or downloaded images in violation of § 2252.").  In fact, it is "common sense" that a person who voluntarily joins this type of service, and retains membership for approximately a month without cancelling his subscription would download such pornography from the website and have it in his possession.  *See United States v. Froman*, 355 F.3d 882 (5th Cir. 2004).  Furthermore, SA Tedder's recitation of Collins's statement of having seen an image of an adult sodomizing a prepubescent male child on the defendant's hard drive provided sufficient probable cause to search the defendant's hard drive and his home.  Tr. Vol. I, 50; 56;  *See also United States v. Grosenheider*, 200 F.3d 321, 327-28 (5th Cir. 2000); *United States v. Runyan*, 290 F.3d 223, 235-36 (5th Cir. 2002) (probable cause sufficient to search defendant's home when based on witness's discovery of child

pornography); *see also United States v. Perez,* 484 F.3d 735, 740-41 (5th Cir. 2007) (probable cause existed to search home based on witness's report that email user sent witness child pornography).

These Affidavits detailed the two ICE investigations, which involved multiple purchases for memberships and subscriptions to websites offering access to videos and images depicting child pornography.  This evidence, coupled with the statements from the interview of Collins regarding the discovery of file names indicative of child pornography and an image depicting a minor engaging in sexually explicit conduct on a hard drive belonging to the defendant, provided probable cause to believe that evidence of the possession and receipt of child pornography would be found on the defendant's hard drive and in his home.

> D.  **Law Enforcement Complied with Rule 41; Any Possible Violation Does Not Warrant Suppression**

Once SA Tedder obtained the search warrant for the hard drive, which was already in evidence at the FBI Office, it was officially seized and a request was provided to the forensic analysis unit for the hard drive to be examined.  Tr. Vol. I., 99; Tr. Vol II, 23-24.  Neither Fed. R. Crim. P. 41 nor the Fourth Amendment provides for a specific time limit in which a computer may undergo a forensic examination after it has been seized pursuant to a search warrant.  *See United States v. Sanchez,* 689 F.2d 508, 512 n.5 (5th Cir. 1982); *United States v. Hernandez*, 183 F.Supp.2d 468 (1st Cir. 2002).  The examination of items at a later date does not make the evidence suppressible.  *Id.; see also United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005); *United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009)( "[p]robable cause to search was unaffected while the hard drive sat in an evidence locker and the reasons to search the computer

and hard drives did not dissipate during this time); *United States v. Gorrell*, 360 F.Supp. 2d 48, 55 (D.D.C. 2004)(ten-month delay in processing of computer and camera seized, although lengthy, did not warrant suppression); *United States v. Triump Capital Group, Inc.*, 211 F.R.D. 31, 66 (D. Conn. 2002) (computer searches cannot be subject to any rigid time limit because they may involve much more information than an ordinary document search and a greater degree of care in their execution); *United States v. Mutschelknaus*, 564 F. Supp. 2d 1072, 1077 (D.N.D. 2008) (holding forensic exam, which occurred 52 days after the 10-day deadline, permissible); *Matter of the Search of the Scranton Housing Authority*, 436 F. Supp. 2d 714, 727-28 (M.D. Pa. 2006), *vacated on other grounds*, 487 F. Supp. 2d 530 (M.D. Pa. 2007) (forensic exam that continues "up until today" valid on computer seized more than a year earlier because seized computer hard drives contain evidence that is "frozen in time").

Any evidence of child pornography offenses present on the defendant's hard drive on December 5, 2008 would have remained intact while it remained in evidence at the FBI Field Office awaiting forensic analysis.  In any event, even if Rule 41 was technically violated in this case, the requirements of Rule 41 are ministerial in nature.  *Triump Cap.Grp. Inc.,* 211 F.R.D. at 65.  Any technical violation of this rule does not require the court to invalidate an otherwise properly executed warrant or to suppress any evidence acquired under it.  *Id.* at 66; *United States v. Dudek*, 530 F.2d 684 (6th Cir. 1976).

### E. The Search Warrants Were Not Based Upon Stale Information, Nor Were They Overbroad

The defendant has claimed in prior filing that the search warrants were based upon stale information or that the warrants were overbroad.  The United States addressed those arguments

in its prior response, *See* Dkt. 129 pp. 19-26.  The United States incorporates those arguments herein.

**F.  The *Leon* "Good Faith" Exception, If Necessary, Defeats the Motion to Suppress**

As detailed fully above, there was sufficient probable cause to support the issuance of these search warrants.  Even if this Court were to conclude otherwise, the evidence seized should not be suppressed because the seizing officers acted in good faith.  "Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith."  *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003) (citing *United States v. Leon*, 468 U.S. 897 at 921-5 (1984)).  SA Tedder's decision in obtaining these search warrants, prior to the search of the hard drive and the defendant's residence, is prima facie evidence that he acted in good-faith.

An affidavit in support of a search warrant enjoys a presumption of validity.  *See Franks v. Delaware,* 438 U.S. 154, 171 (1978); *United States v. Breckenridge*, 782 F.2d 1317, 1322 (5th Cir. 1986).  To even warrant an evidentiary hearing on Franks allegations involving alleged false statements or material omissions in an affidavit, a defendant must make a "substantial preliminary showing," *id.*, that (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the warrant affidavit and (2) the remaining portion of the affidavit is insufficient to support a finding of probable cause.  *United States v. Brown,* 298 F.3d 392, 395 (5th Cir. 2002).  "Even if the defendant makes a showing of deliberate falsity or reckless disregard for the truth by law enforcement officers, he is not entitled to a

hearing if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Id*. (quoting *United States v. Dickey*, 102 F.3d 157, 161–62). While it is true that the requisite falsehood in an affidavit can be perpetrated by omission as well as commission, to necessitate a *Franks* hearing, an omission "must be of information that is not only relevant, but dispositive, so that if the omitted fact were included, there would not be probable cause." *See United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000). Unless the defendant makes a strong preliminary showing that the affiant excluded critical information from the affidavit with the intent to mislead the magistrate, the Fourth Amendment provides no basis for a subsequent attack on the affidavit's integrity. *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995). The defendant must show intentional or reckless conduct; allegations of negligence or innocent mistake are insufficient. *Franks*, 438 U.S. at 171.

Furthermore, in order to strip the warrant of probable cause entirely, and to warrant a *Franks* hearing, a deliberate false statement or omission would have to completely undermine a finding of probable cause for the entirety of the warrant. *See United States v. Froman*, 355 F.3d 882, 890-91 (5th Cir. 2004) (holding affidavit still supported probable cause despite affiant's false representation that all members of group automatically received emails containing child pornography because, even if not all members received the emails, the "magistrate was entitled to conclude that the overriding reason someone would join this group was to permit him to receive and trade child pornography"); *see also United States v. Davis*, 226 F.3d 346, 351-352 (5th Cir. 2000) (omission absolving defendant of one act of fraud did not strip warrant of probable cause where affidavit contained evidence of different act of fraud). It is not enough to

14

show that the omitted information, had it been included, would have "weakened" the case for probable cause—it must dispose of it entirely.  *See Davis*, 226 F.3d 346 at 351.

The defendant has claimed in prior filings that SA Tedder did not inform the magistrate that Collins had given inconsistent statements when interviewed by law enforcement.  During Collins's initial brief interview with SA Jones, he indicated that he believed the file depicting child pornography that he observed on the defendant's hard drive was not transferred to the new computer because it was located in the "root directory."  Tr., Vol. I, 14.  When Agent Tedder interviewed Collins in January of 2008, he specifically asked Collins whether or not his file would have been transferred to the new computer.  *Id.* at 52.  Collins told SA Tedder that he believed that all files, including the image he observed and believed to depict child pornography, were transferred by Wilson to the new computer.  *Id.  see also* Tr. Vol. II, 43-45.  SA Tedder included information in the affidavit that he obtained from his in person interview Collins, which included the information that he had clarified regarding the files and data that had been copied from the old hard drive to the defendant's new computer.  Tr. Vol. II, 44-45.

At the time that SA Tedder obtained the search warrant, he believed that all of the statements contained in the affidavit were true.  Tr. Vol. I, 98.  SA Tedder did not intentionally omit information regarding the phone interview of Collins in an effort to mislead the magistrate. *Id.  see also* Tr. Vol. II, 43.  To the contrary, he included the information from Collins that he believed to be accurate.  In any event, in order to warrant suppression, the defendant must establish that, had the omitted information been included, it would have defeated probable cause. *See Davis*, 226 F.3d at 351.  Even if SA Tedder had articulated that Collins initially reported that he believed that the file had not been transferred, but later clarified his clear belief that it was, the

inclusion of that information does not defeat probable cause.  In the first instance, the magistrate would have been entitled to rely upon the information that Collins stated to SA Tedder.  Even if the inconsistent accounts were read to cancel each other out, there remains sufficient content in the warrant affidavit to support a finding of probable cause – including the fact that Wilson observed filenames indicative of child pornography on the hard drive as well as the defendant's multiple purchases on commercial websites providing access to child pornography.

The defendant has also claimed in prior filings that the government acted in bad faith by not informing the magistrate that Title 18 U.S.C. §§ 2252A (a)(5)(B) and 2252 (a)(5)(B) had been amended to criminalize the access with intent to view child pornography in October of 2008.  Defendant's Reply at pp. 19-20.  However, the Affidavits at issue broadly cite Title 18, United States Code, Sections 2252 and 2252A as the criminal violations under investigation.  Ex. 4, 5 ¶¶ 4-5; Tr. Vol. II, 31-32.  SA Tedder testified that the purpose of executing these search warrants was to find evidence of the possession, distribution, receipt, and production of child pornography.  *Id.* at 30.  He was not solely investigating the crime of access with the intent to view child pornography.  *Id.* at 32.  Furthermore, the change in the law did not influence the timing of obtaining these warrants in any way.  Tr. Vol. II, 30-31.  The defendant's multiple purchases of subscriptions to child pornography websites recited in the affidavits provided probable cause to search a computer or residence for evidence related to the above-listed criminal offenses; not merely for the crime of accessing child pornography with intent to view. *See* Dkt. 129 pp. 16-17.  Based upon SA Tedder's training and experience, individuals who purchase access to these websites typically download and save the things that they look at and pay for.  Tr. Vol II, 32.  It was the totality of these facts, when combined with Collins's

statements to SA Tedder, which provided the probable cause to believe that evidence of the possession and receipt of child pornography would be found on the defendant's hard drive and in his home.

It is the defendant's burden to establish that there was bad faith in the presentation of these warrants or that there were dishonest or reckless statements made in the preparation of the affidavits that, if removed, would render the remaining portions of the affidavits insufficient to support a finding of probable cause. The United States has preliminarily addressed defendant's pre-hearing contentions regarding alleged material falsehoods or omissions in its initial briefing, *see* Dkt. 129 pp. 29-39, as well as herein. The United States reserve the right to request leave to file further briefing following the defendant's post-hearing brief.

WHEREFORE, for all of the above-mentioned reasons, the government respectfully requests that this Honorable Court deny the defendant's Motion to Suppress.

Dated: June 9, 2014                         Respectfully submitted,

ANDREW G. OOSTERBAAN
Chief, Child Exploitation and Obscenity Section
U.S. Department of Justice, Criminal Division

s/  Amy Elizabeth Larson

BY:  AMY ELIZABETH LARSON
Trial Attorney
NY Bar No. 4108221

KEITH A. BECKER
Trial Attorney
NY Bar No. 4287967

17

**CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2014, a copy of the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will also be sent to all counsel of record by operation of the court's electronic filing system.


s/ Keith A. Becker_____