UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

GEORGE WILLIAM JARMAN

CRIMINAL ACTION

NO. 11-38-JJB

## RULING

This matter is before the Court on Defendant George William Jarman's (Jarman) Motion (Doc. 116) to Suppress and for a *Franks* Hearing. The defendant moves "to suppress the Western Digital Hard Drive at issue in this case and all fruits thereof, and all fruits of the search of [Jarman's] home, including but not limited to the Compaq laptop computer and desktop computer." (Doc. 116 at 1) The Government opposes the motion. (Doc. 129). The Court held a hearing on this motion on April 2, 2014, and the hearing concluded on April 3, 2014. The parties filed post-hearing pleadings on this matter, as well as supplemental post-hearing pleadings. (Docs. 161, 167, 176, and 177). For the reasons provided herein, the Court grants Jarman's Motion to Suppress (Doc. 116) the Western Digital hard drive and denies Jarman's motion to suppress fruits of the search of the residence.

## Background

On November 26, 2007, Jason Collins (Collins), co-owner of a computer repair store in Baton Rouge, called FBI Special Agent and certified computer examiner Larry Jones (Special Agent Jones). (Doc. 157 at 7–8, 11). Collins specifically requested Special Agent Jones due to his attorney's recommendation. *Id*. at 8. Collins informed Special Agent Jones that he suspected one of his customers had child pornography on his computer hard drive. *Id*. Collins identified the customer as a Baton Rouge attorney who worked at the Kean Miller law firm, but Collins would not provide his name or any further identifying information. *Id*. at 8–9, 12. Collins stated that the

customer "had purchased a new computer and asked Collins to transfer the data from the hard dive of an old computer onto the new computer." *Id*. at 12. After the transfer, the customer wanted the old hard drive wiped clean. *Id*. at 14.

The individual who performed the transfer was Charlie Wilson, a part-time employee of Collins. *Id.* During their interview, Collins did not provide the date that Wilson performed the transfer that revealed the alleged child pornography. *Id*. at 26. During the transfer, Wilson "noticed file names which . . . appeared to possibly be of child pornographic content." *Id.* While the transfer was ongoing, Wilson could not view the actual files, but he could view the names of files being copied. *Id*. at 27, 56. Collins then requested that Wilson bring the original hard drive back to the computer repair shop for review. *Id.* Collins informed Special Agent Jones that upon reviewing the hard drive, "he saw several file names in temporary Internet field which . . . were suggestive of child pornography." *Id*. at 13. In addition, Collins told Special Agent Jones that he viewed a video file that he felt constituted child pornography. *Id.* Nonetheless, Collins informed Special Agent Jones that he did not believe that the video file had been transferred to the customer's new computer, as that video file resided in the hard drive's "root directory." *Id*. at 14, 33. During the interview Special Agent Jones did not obtain the names of any of the alleged child pornography computer files. *See id*. at 28–29. After Collins finished his recitation, Special Agent Jones requested that Collins retain the hard drive until someone from the FBI contacted him to gain additional details. *Id.* Special Agent Jones then composed a memo requesting that an investigation be opened and submitted that document to his supervisor. *Id*. at 15.

At some point thereafter, Special Agent Thomas Tedder (Special Agent Tedder) was assigned to the case, and he tried to set up an initial interview with Collins. *Id*. at 45. After difficulty contacting Collins, Special Agent Tedder set up a meeting for January 24, 2008, at the

FBI office. *Id* at 46–47. Collins brought the hard drive to Special Agent Tedder at their meeting on January 24. *Id*. at 53–54. In the interview, Collins told Special Agent Tedder that Jarman was the customer who requested the hard drive transfer and wipe. Collins then gave a statement similar to that given to Special Agent Jones. *See id*. at 49–50. However, at this interview—with Special Agent Tedder—Collins stated that he copied a suspected child pornography file from the hard drive to his personal computer to view it and, upon viewing the file, that he saw a single "image of an adult sodomizing a prepubescent male." *Id*. at 50. Additionally, Collins told Special Agent Tedder that he believed that all the files had been transferred by Wilson to the new computer, whereas he previously stated that the suspected child pornography file that he viewed had not been transferred to the customer's new computer. *Id*. at 52.

After the interview, Special Agent Tedder prepared a chain of custody memorandum regarding the hard drive and submitted it to the evidence control room in New Orleans. *Id*. at 56. He then contacted the United States Attorney Office in Baton Rouge. *Id*. at 57. Due to Jarman's involvement, the United States Attorney Office expressed concerns regarding potential recusal. *See id.* Eventually, Special Agent Tedder was notified that attorneys in the Criminal Division of the Department of Justice, and specifically within the Child Exploitation and Obscenity Section, would be handling the case. *Id*. at 70.

At the hearing, Special Agent Tedder testified that he learned in June 2008 that Jarman was the subject of a separate investigation conducted by United States Immigration and Customs Enforcement (ICE). *Id*. at 72. According to his testimony, this information came to him through an electronic communication dated June 25, 2008 from the FBI cyber unit. *Id*. at 72, 117–18. That information concerned an ICE investigation in October 2005 regarding purported activities connected to the child pornography site "illegal.CP." (*See* doc. 116-2 at 16–20, 55–59; doc. 157

at 80–81). Through the investigation, ICE obtained email addresses of individuals who purchased access to the website, including Jarman. (Doc. 157 at 83–84). Special Agent Tedder personally reviewed the documents attached to the electronic communication and other information for verification purposes, and he included the information in the search warrant affidavit. *Id*. at 73–74, 84.

Special Agent Tedder testified that in August 2008, he received a second lead relating to another investigation conducted by ICE in April 2006 concerning a separate child pornography site known as "Home Collection." (Doc. 116-2 at 20–34, 59–73; Doc. 157 at 84–85). Through this investigation, ICE determined that Jarman engaged in seven transactions, from October 2006 to January 2007, to purchase subscriptions to three child pornography sites. *Id*. at 86, 88–89. Nevertheless, Special Agent Tedder testified that he did not have any direct knowledge while drafting the search warrant affidavit that Jarman actually downloaded files from these child pornography sites. *Id*. at 95–96.

At the hearing, Special Agent Tedder testified that he and Alecia Wolak—a former Department of Justice prosecutor assigned to this matter—began drafting the relevant affidavit around September 2008 or October 2008. *Id*. at 105. Ultimately, Special Agent Tedder composed two search warrant affidavits—one for Jarman's residence and one for the aforementioned hard drive previously taken from his residence. *Id*. at 77–79. The affidavits contained information about the relevant statutes, the history regarding the seizure of computers and the taint teams, detailed information concerning the "illegal.CP" and "Home Collection" investigations, details about the information obtained by Collins, and background on the general characteristics of individuals who receive and possess child pornography. (Doc. 116-2).

Special Agent Tedder obtained search warrants for the defendant's residence and the hard drive on December 5, 2008. (Doc. 157 at 98). The search warrant for the defendant's residence was executed on December 8, 2008. *Id*. at 98–99. After the search, officers found sexually explicit images and videos of minors on the computer hardware seized from the home. (Doc. 116 at 4).

After obtaining the search warrant for the hard drive, Special Agent Tedder filled out a Computer Analysis Response Team (CART) request to have the hard drive examined, and he made a notation in the request to go through a "taint procedure" when conducting that search. (Doc. 157 at 99). Though the search occurred in December 2008, CART did not receive the hard drives and computers obtained in the search of Jarman's home until September 2, 2009 and July 9, 2010. (Doc. 158 at 25). Accordingly, the actual forensic examination of the hard drives did not begin until after August 2009, and CART did not complete the search until 2010. *Id*. at 26.

## Analysis

I.     Seizure of the Western Digital Hard Drive

The defendant first argues that the Government's seizure of the Western Digital hard drive without procuring a search warrant was unreasonable, and thus, violated his Fourth Amendment rights. "The Supreme Court has determined that warrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions." *United States v. Cardenas*, 9 F.3d 1139, 1147 (5th Cir. 1993) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971)).

First, it must be determined if the Government wrongfully seized the defendant's hard drive at the outset. In this case, the facts show that Jason Collins initially took the laptop containing the hard drive due to his employee's claims of viewing file names suggestive of child

5

pornography. Thereafter, the evidence shows that Collins, through no request or command from any other individual, began to look through the files on the hard drive and viewed either an image or a video that was indicative of child pornography.[1] On November 26, 2007, Collins contacted Special Agent Jones to discuss what he discovered, and based on such information, Special Agent Jones ordered Collins to retain possession of the hard drive until the FBI contacted him again for additional details and to recover the hard drive. The FBI contacted Collins on January 24, 2008, and Special Agent Tedder recovered the hard drive, which had been in Collins' possession for approximately two months since his initial contact with the FBI.

Neither party provided any evidence that, prior to November 26, 2007, the FBI commanded or otherwise suggested that Collins should remove the Western Digital hard drive from Jarman's residence and then subsequently search that hard drive. As a result of the November 26, 2007 interview, the FBI ordered Collins to retain possession of the hard drive until a follow-up interview could be conducted. This interview was the first contact between Collins and the FBI, and the evidence shows that this was the first time the Government commanded that Collins retain the hard drive. There is no evidence that the FBI also ordered Collins to perform further searches of the hard drive.

Collins actions prior to the interview on November 26, 2007, including having the hard drive removed from Jarman's house and searching that hard drive, do not invoke Fourth Amendment concerns because these actions were private. *See United States v. Grimes*, 244 F.3d 375, 383 (5th Cir. 2001) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Prior to the interview of November 26, 2007, Collins was not a government agent for purposes of the Fourth Amendment analysis. "Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the

---

[1] Whether it was an image or video is not relevant to the legal issues presented.

Government's participation in the private party's activities . . . ." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989). In *United States v. Paige*, the Fifth Circuit delineated the two-part test used to determine whether a private party was a government actor for purposes of the Fourth Amendment. *See* 136 F.3d 1012, 1018 (5th Cir. 1998). The two-part test is "(1) whether the government knew or acquiesced in the intrusive conduct; and (2) whether the private party intended to assist law enforcement efforts or to further his own ends." *Id.* In this case, there is no evidence that the Government either knew or acquiesced in Collins' conduct, and no evidence that Collins intended to assist law enforcement through his actions. Collins contacted his lawyer to assess the situation, indicating his actions were not about assisting the investigation but rather compliance with the law.[2] Accordingly, prior to November 26, 2007, Collins was not a government actor; his actions were private and do not raise Fourth Amendment issues.

Collins became a government actor after his interview with Special Agent Jones on November 26, 2007. In that interview, Special Agent Jones requested that Collins retain possession of the hard drive until another interview could be conducted. Collins' retention of the hard drive was intended to assist law enforcement efforts, as it is was done at the request of the Government and not to further Collins' own ends. Accordingly, after the interview on November 26, 2007, Collins became a government actor, making his retention of the hard drive after that date subject to Fourth Amendment analysis. *See Grimes*, 244 F.3d at 383.

Because Collins became a Government actor on November 26, 2007, the Court must determine whether the seizure of such hard drive on that date violated the Fourth Amendment. "Generally, 'seizures conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few

---

[2] I.e. to make sure he avoided criminal liability for failure to report the images that he discovered.

7

specifically established and well delineated exceptions.'" *United States v. Paige*, 136 F.3d 1012, 1022 (5th Cir. 1998) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)). "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Place*, 462 U.S. 696, 701 (1983). If Collins had returned the hard drive to Jarman after this interview, the circumstances would have been suspicious. Jarman, an experienced attorney, could have taken a variety of measures to destroy potential evidence on the hard drive, including corrupting data or destroying the hardware itself. Therefore, the initial seizure does not violate the Fourth Amendment; exigent circumstances put potential evidence in the hard drive at risk of being lost or destroyed.

Even though the initial seizure was permissible, the defendant contends that it took the Government an unreasonable length of time to secure a warrant for the Western Digital hard drive. The Government took possession of the hard drive on November 26, 2007, when Collins became a government actor, but did not obtain a search warrant until December 5, 2008—over a year after the initial seizure. "[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *United States v. Jacobsen*, 466 U.S. 109, 124 (1984) (*Place*, 462 U.S. 696). "[E]ven a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant." *United States v. Martin*, 157 F.3d 46, 54 (5th Cir. 1998) (citing U.S. Const. amend. IV; *United States v. Respress*, 9 F.3d 483, 488 (6th Cir. 1993)). In analyzing the situation, the Court "must balance

the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Place*, 462 U.S. 696 at 703. "[W]hen determining whether a delay renders a seizure unreasonable under the Fourth Amendment, [the Court] evaluate[s] the totality of the circumstances presented by each case." *United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 2012) (citing *United States v. Mitchell*, 565 F.3d 1347, 1351 (11th Cir. 2009)).

"In the past, courts have identified several factors highly relevant to this inquiry: first, the significance of the interference with the person's possessory interest; second, the duration of the delay; third, whether or not the person consented to the seizure; and fourth, the government's legitimate interest in holding the property as evidence." *Id.* at 613–14 (internal citations omitted). Additionally, courts must consider "whether the police diligently pursue[d] their investigation." *Id.* at 614 (alteration in original) (quoting *Place*, 462 U.S. at 709) (internal quotation marks omitted). "Thus, among other factors, [courts] consider the nature and complexity of the investigation and whether 'overriding circumstances arose, necessitating the diversion of law enforcement personnel to another case,' the quality of the warrant application and the amount of time we expect such a warrant would take to prepare, and any other evidence proving or disproving law enforcement's diligence in obtaining the warrant." *Id.* (internal citations omitted) (quoting *Mitchell*, 565 F.3d at 1353). The "factors are by no means exhaustive, but they are the most relevant when [courts] seek to 'balance the privacy-related and law enforcement-related concerns.'" *Id.* (quoting *McArthur*, 531 U.S. at 331).

The Government contends that "[t]he fact that there was probable cause to believe the drive contained contraband significantly reduces the defendant's possessory interest in it, and, at the same time, greatly heightens law enforcement's interest in not returning it." (Doc. 161 at 8).

9

Further, the Government avers that "[t]he defendant's possessory interest in the hard drive was further diminished—if not entirely eliminated—because, at his instruction, Mammoth computing[3] transferred his personal data from the drive to the new computer he purchased." *Id*. at 9. Accordingly, the Government maintains that the defendant's possessory interest in the hard drive was so significantly diminished that even a thirteen-month delay in obtaining the search warrant was not unreasonable. *Id.*

The Court agrees that the Government had probable cause to believe that the Western digital hard drive contained child pornography. "A police officer has probable cause to conduct a search when 'the facts available to [him] would warrant a [person] of reasonable caution in the belief' that contraband or evidence of a crime is present." *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (internal quotation marks omitted) (quoting *Texas v. Brown,* 460 U.S. 730, 742 (1983)). Probable cause "requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Brown*, 460 U.S. at 742 (citations omitted) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)). Collins informed both Special Agent Jones and Special Agent Tedder that his computer technician, Charlie Wilson, noticed file names suggestive of child pornography while transferring files from the Western Digital hard drive to the new computer. (Doc. 157 at 27–28, 55–56). Further, Collins told both Special Agents that he personally viewed a file that he believed contained child pornography, and Collins described the file to Special Agent Tedder as an "image of an adult sodomizing a prepubescent male." *Id*. at 50. While Collins' description of the type of file changed between his interviews—from a video to an image—that he personally viewed a file containing child pornography on the hard drive in

---
[3] Mammoth Computing is the name of Collins's computer repair business.

question did not change. Based on these statements, the Court finds that the government agents had probable cause to believe that the Western Digital hard drive contained child pornography. Additionally, this information provided the Government with a "strong interest in retaining the laptop and not returning it" to the Defendant. *United States v. Howe*, 545 F. App'x 64, 66 (2d Cir. 2013).

Though the government had probable cause to seize the hard drive, the delays in both obtaining a warrant and searching the hard drive now require attention. Although the initial seizure of the hard drive is constitutional, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the [Fourth] Amendment." *United States v. Jacobsen*, 466 U.S. 109, 124 (1984). Whether the delay is reasonable depends on the court's balancing of competing interests: governmental and private. *United States v. Mitchell*, 565 F.3d 1347, 1351 (11th Cir. 2009). The government argues that Jarman's possessory interest in the hard drive was diminished so significantly that the delay in obtaining the warrant was not unreasonable. They offer two grounds: first, because there was probable cause to search and seize the hard drive; second, because Mammoth Computer's employees had already copied all the data and information onto another hard drive.

According to the government, *United States v. Howe* is instructive. 545 F. App'x 64. In *Howe*, the government agent waited thirteen months to obtain a warrant for a laptop that the government had previously seized based on probable cause but without a warrant. *Id.* at 66. The Second Circuit found that despite the length, the delay in obtaining the search warrant "was not constitutionally infirm on the facts of [the] case." *Id.* Nevertheless, there are stark differences between the two cases. In *Howe*, the Second Circuit pointed out that it was "not a case in which

11

the government provided no explanation for its delay and did not show any sense of urgency in obtaining a search warrant." 545 F. App'x at 66. Instead, the relevant government agent in *Howe* "swore out an application for a *state* warrant to search [the defendant's] residence and the laptop the day after the computer was seized." *Id.* (emphasis added). However, the thirteen-month delay in securing the *federal* search warrant resulted from the government agent's erroneous belief "that he had obtained a *state* warrant to search the laptop. *Id.* (emphasis added). This is clearly not the case here. There are no errors or mistakes referenced, by either party, that lead to the delay. Ultimately, the government did have an interest in the hard drive due to the suspicion of there being child pornography on it, but this interest alone did not justify a thirteen month delay.

The government's second argument, that Jarman's possessory interest was diminished because the he had access to the data because it was copied, is not persuasive. Jarman does refer to the significance of all the information typically found on a hard drive—and how crucial this information can be to a person's life and work. However, although Jarman had access to the data, he also wanted the hard drive installed in his daughter's room. This gave him a possessory interest in this particular hard drive, and that a different hard drive ended up in that room to avoid tipping him off to the investigation does not affect this analysis. The hard drive was his property, and he instructed a private citizen who later became a government actor to install it in his home. Jarman had no intention of abandoning the hard drive, nor was his sole interest in it the data that was copied onto his new computer.

Turning to the remaining factors, a thirteen-month delay between seizing the hard drive and securing the warrant is a lengthy duration; in *Howe*, the Second Circuit acknowledged this. 545 F. App'x at 65. Additionally, there is no evidence that Mr. Jarman consented to the seizure or even knew that the seizure of the hard drive occurred. Further, the Government has stated

definitively that it "is not contending that any delay was justified due [Special Agent] Tedder's case load," "the size of his office/geographic territory," "the recusal by the U.S. Attorney's Office for the Middle District of Louisiana," or "the need to establish a 'taint team' in conjunction with the searches due to the defendant being a practicing attorney." (Doc. 161 at 7 n.5). Further, the Court finds that the nature of this investigation, specifically the fact that the Defendant was a practicing attorney in Baton Rouge, did not justify such an extended delay in obtaining a search warrant.

Therefore, based on the foregoing, the Court finds that the government's yearlong, warrantless seizure of the Western Digital hard drive was unreasonable, and thus, violated the Fourth Amendment. Accordingly, the Court must suppress the hard drive as a result of the constitutional violation.

II. Search Warrant for the Residence

Additionally, the defendant seeks to suppress all fruits of the search of Mr. Jarman's home, including the Compaq laptop computer and desktop computer. The defendant offers several arguments for excluding this evidence. Under Fifth Circuit precedent, the Court must "apply a two-step test to determine whether to suppress evidence under the exclusionary rule: first, we ask whether the good faith exception to the rule applies, and second, we ask whether the warrant was supported by probable cause." *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014) (citing *United States v. Mays*, 466 F.3d 335, 342–43 (5th Cir. 2006)).

The Government argues that regardless of any problems with the warrant, the exclusionary rule should not apply to suppress the fruits of the search of Mr. Jarman's residence because of the good faith exception. "The good faith exception to the exclusionary rule provides 'that evidence obtained by law enforcement officials acting in objectively reasonable good-faith

reliance upon a search warrant is admissible' even if the affidavit on which the warrant was grounded was insufficient to establish probable cause." *Id.* (quoting *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997)). The Fifth Circuit "has recognized several circumstances in which the good faith exception does not apply, including where the judge who issued the warrant acted after being 'misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth,' or the affidavit upon which the warrant is founded is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* (quoting *Mays*, 466 F.3d at 343). The Court only has to look at "whether the magistrate who issued the warrant had a substantial basis for believing there was probable cause for the search" if the court determines that the good-faith exception is inapplicable. *United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000) (citing *United States v. Cherna*, 184 F.3d 403, 406 (5th Cir. 1999)).

"To impeach the warrant, [the defendant] must show that [Special Agent Tedder] either deliberately or recklessly misled the magistrate and that without the falsehood there would not be sufficient matter in the affidavit to support the issuance of the warrant." *Id.* (citing *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978)). "The necessary falsehood can be perpetrated by omission as well as commission, but the omission must be of information that is not only relevant, but dispositive, so that if the omitted fact were included, there would not be probable cause." *Id.* (citing *United States v. Bankston*, 182 F.3d 296, 305 (5th Cir. 1999)). The defendant, in his supplemental post-hearing brief, pointed to several contradictions and inconsistencies between the affidavits and Special Agent Tedder's testimony at the hearing. (Doc. 176). These include discrepancies concerning dates, such as when Special Agent Tedder discovered the ICE investigation of Mr. Jarman. *Id.* at 4. Jarman also raised concerns about the investigation,

14

questioning, for example, why Collins' statements about the image or video he viewed were not corroborated. *Id.* at 20–21. Additionally, Jarman noted several omissions in the affidavits, including that the image and file names noted by the Mammoth employees were in the temporary internet files, making them extremely difficult to access[4] without sophisticated knowledge. (Doc. 167 at 10). Finally, Jarman argues that the warrant's terms were overbroad and failed to describe the places to be searched and objects to be seized with sufficient particularity. (Doc. 116-1 at 36–42).

In response, the Government counters that Special Agent Tedder believed that all of the information contained in the affidavit was true at the time he obtained the search warrant for the defendant's residence. The Government avers that Special Agent Tedder did not intentionally omit information from the affidavit in an effort to mislead the reviewing magistrate judge. Further, the Government contends that even if the omitted information had been included, it still would not have defeated probable cause, and therefore, the good faith exception still applies.

Though the Government's investigation may have been less than ideal, the Court finds that the good faith exception applies. Jarman's supplemental post-hearing pleading (Doc. 176) pointed out numerous inconsistencies between Special Agent Tedder's testimony and the documentary evidence, but given the length of time between the events discussed by Special Agent Tedder in his testimony and the hearing, the Court does not find that Special Agent Tedder's incorrect statements were deliberate. Further, although these inconsistencies are numerous, the Court finds the actions of Special Agent Tedder and the government do not rise to a reckless disregard for the truth. The good faith exception also applies to a warrant that is overbroad, rendering the defense's arguments on that front unpersuasive. *United States v. Ninety-*

---

[4] At the time of the events in the affidavits, accessing with intent to view was not yet covered by the child pornography statutes; only distribution and possession were prohibited.

*Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92, 422.57)*, 307 F.3d 137, 149 (3d Cir. 2002). To the extent that the issues raised by Jarman would undermine probable cause or invalidate the warrant, these are mooted because Special Agent Tedder had a good faith belief that the warrant was valid. Because the good faith exception applies, the second, probable cause prong of the analysis is unnecessary.

## Conclusion

For the reasons stated herein, the defendant's motion to suppress (Doc. 116) is **GRANTED IN PART** with respect to the Western Digital Hard Drive and **DENIED IN PART** with respect to the search of the defendant's home.

Signed in Baton Rouge, Louisiana, on October 14, 2014.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**