MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

CRIMINAL ACTION

VERSUS

NO. 11-38-JJB

GEORGE WILLIAM JARMAN

**RULING ON MOTION TO DISMISS OR ALTERNATIVELY SUPPRESS THE LAPTOP HARD DRIVE**

This case is before the Court on a Motion to Dismiss or Alternatively Suppress the Laptop Hard Drive (Doc. 115) filed by the defendant, George William Jarman (Jarman). The government filed an opposition (Doc. 137) to which Jarman replied (Doc. 144). Oral argument is unnecessary.

**Background**

The Court has recounted the facts in this case numerous times, so for this motion, it is only necessary to recount only a small subset of facts. In December of 2011, the Court granted (Doc. 54) Jarman's Motion to Compel (Doc. 45) and ordered the government to produce mirror images of each of the three hard drives seized by the government.[1] Although the Court ruled on the Motion to Compel in December of 2011, the Fifth Circuit did not file its mandate[2] until August 6, 2012. Jarman asked for the forensic images several times, but the government did not deliver them until October 2012. These images, according to Jarman, were not the ones that he requested; he sought mirror images of the hard drives in their current state at the time of the request.

---

[1] The three hard drives were the western digital hard drive—the one he gave to Mammoth Computers for repairs—the desktop hard drive from another home computer, and the hard drive from a Compaq laptop. The laptop hard drive is the primary concern here.
[2] The actual ruling was handed down in July 2012.

1

In January of 2013, Jarman requested "current state" mirror images again, and, after a dispute about the need to redo the forensic imagining process, the government agreed to produce new mirror images of the hard drives in their current state. After this production, Jarman's objections shifted to the format of the image for the laptop from his home. Unlike the other two forensic images, the laptop's hard drive was in the "DD" format, and according to Jarman, this format prevents accurately determining when the image was created. Further, they claimed that their computer expert, Tami Loehrs (Loehrs), could not read the image. Consequently, they requested an image in the "E01" format—the same format as the other two images.

After arguments about whether other evidence could establish when the image was created—the government claims the chain of custody log demonstrates that the image was made on June 12, 2013, for example—the government attempted to create an E01 image of the laptop hard drive. Unfortunately, they could not due to "bad sectors" on the hard drive. "Sectors" are units of data, and a "bad sector" is one is that "defective or unreadable by a computer." Doc. 137 at 10. Although these defective sectors do not normally prevent a computer from functioning, they can prevent[3] an accurate forensic image. The government informed Jarman that they could not produce an E01 image of the laptop hard drive, and Jarman requested additional information about the process, such as the identity of the individual who decided to use the other format.

One of the primary issues involves the log file associated with the DD image. In an E01 image, that file is within the image, while a DD image, when it is created using the tools[4] that the government's examiner used, produces a log file that must be printed and filled out. According to the government, their examiner, Scott Downie (Downie), put the information that would go in the log into his report. Loehrs opined to Jarman and his counsel that this was unusual and

---

[3] This occurs when the forensic tool refuses to continue after being unable to read a bad sector.
[4] This tool is called a "Logicube Talon."

2

suspicious, and Jarman maintains that the government's response does not constitute compliance with the Court's order to produce current state mirror images of the hard drive. As a result, Jarman filed this motion seeking relief for the alleged violation.

**Analysis**

Jarman seeks two kinds of relief: first, he seeks to have the entire indictment dismissed based on the alleged misconduct; second, in the alternative, he wants the laptop hard drive suppressed should the Court find that the circumstances do not warrant dismissal.

I. Dismissal

When arguing for dismissal of the indictment, Jarman refers to three avenues: outrageous government conduct, supervisory powers, and Federal Rule of Criminal Procedure 48. Each argument requires attention.

A. Outrageous Government Conduct

The Court can dismiss an indictment when government misconduct is "'so outrageous' that is violates the principle of 'fundamental fairness' under the due process clause of the Fifth Amendment." *United States v. Johnson*, 68 F.3d 899, 902 (5th Cir. 1995) (quoting *United States v. Russell*, 411 U.S. 423, 431–32 (1973)). This remedy should only be used "in the rarest of circumstances." *Id*. One instance where such a remedy may be appropriate is when the government breaches an agreement with the defendant. *United States v. Millet*, 559 F.2d 253, 256–57 (5th Cir. 1977). Jarman argues that the government violated its agreement to turn over the laptop hard drive in the proper format, and he further argues that the government repeatedly ignored the Court's order concerning the forensic images. The government contends that it has complied with the order for several reasons—for example, they point out that the order did not

specify a format, making the DD format acceptable—and that, in any event, the alleged conduct is not severe enough to warrant a dismissal.

Although the government's conduct may be troubling, they are correct in several respects. First, the order did not specify a format. Second, the DD format is an accepted format for rendering a forensic mirror image. Third and finally, their reliance on the "rarest of circumstances" language is well-founded. There is no conduct here that is sufficiently outrageous and severe to warrant dismissing the entire indictment. Jarman has remained on house arrest, with an ankle monitor, for over two years, but that alone does constitute a due process violation. Consequently, dismissal based on "outrageous government conduct" is not appropriate.

### B. Supervisory Powers

Jarman cites a Supreme Court case and several Ninth Circuit decisions to support his proposition that under the supervisory powers doctrine, even without a violation of due process, a district court may dismiss an indictment. *United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 2001). His theory offers three such grounds: "to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct." *Id*. The government reads the law differently and argues that *Bank of Nova Scotia v. United States*, the Supreme Court case from which Jarman draws his argument, heavily restricts such "supervisory powers" to the point of mirroring the "outrageous conduct" standard. 487 U.S. 250 (1988). Jarman's reliance on the Ninth Circuit cases expounding on *Bank of Nova Scotia*, according to the government, is inappropriate.

Regardless of whether or not the Ninth Circuit's development of the "supervisory powers" doctrine is applicable here, the facts do not justify dismissal. A significant consideration

presented in these cases is that described by the Ninth Circuit itself: "[d]ismissing an indictment with prejudice encroaches on the prosecutor's charging authority," and it must only be done in cases of "flagrant prosecutorial misconduct." *Simpson*, 927 F.2d at 1091. The Ninth Circuit further explains that dismissal is only appropriate in "extreme circumstances." *United States v. National Medical Enterprises, Inc.*, 792 F.2d 906, 912–913 (9th Cir. 1986). Jarman interprets the events as flagrant prosecutorial misconduct, but the government has not violated the discovery order, and the facts do not support the notion that they deliberately hid information from Jarman. As there has been no major misconduct, none of the three purposes of the Supervisory Powers doctrine would be served by dismissal. Therefore, the Supervisory Powers doctrine is not an appropriate basis for dismissal.

    C.  Federal Rule of Criminal Procedure 48(b)

Rule 48(b) provides the Court with the ability to dismiss an indictment when there is an "unnecessary delay" in, among other things, "bringing a defendant to trial." Fed. R. Crim. P. 48(b). Under this rule, dismissal is only required when "the constitutional speedy trial right" is violated. *United States v. Hill*, 622 F.2d 900, 908 (5th Cir. 1980). However, "the power of the court under 48(b) includes a power to dismiss without prejudice because of delay not rising to the level of a constitutional violation," indicating that though a district court may not be required to dismiss an indictment without a constitutional violation, it still has the power to dismiss should it find dismissal warranted. *United States v. Novelli*, 544 F.2d 800, 803 (5th Cir. 1977); *United States v. Litton Sys., Inc.*, 722 F.2d 264, 272 n. 8 (5th Cir. 1984). Jarman argues that the government's conduct constitutes an intentional delay—he interprets the events to mean that the government knew it could not produce an E01 image and stalled before finally admitting this—and willful deceit. Based on the government's actions, Jarman notes that he was run up over

5

$50,000 in costs relating to Loehrs and the hard drives and spent two unnecessary years on house arrest. (Doc. 115-1 at 16). The government argues that Jarman has alleged no constitutional violation of his speedy trial rights, and they assert that they have "actively litigated this case and repeatedly requested that the case be set for trial." (Doc. 137 at 25).

As the government notes, Jarman has not alleged a violation of his constitutional speedy trial rights, at least not explicitly; regardless, these facts do not justify dismissal under Rule 48(b). Jarman characterizes the government's actions as "willful deceit," but as the government points out, the DD format is generally accepted as a format. It is unusual that they initially chose to do the other two in the E01 and the laptop hard drive in DD, but after making their legal arguments and ultimately agreeing to produce an E01 image, the government realized that their tool could not overcome the bad sectors. Although these irregularities are suspicious and perhaps represent the need for tightening up the investigation process, they do not rise to the level of willfull deceit that Jarman alleges. Consequently, without a constitutional violation and given the nature of the events, dismissal under Rule 48(b) is inappropriate.

II. Discovery Sanctions

In the alternative, Jarman seeks suppression of the laptop hard drive based on the government's conduct. Federal Rule of Criminal Procedure 16(d)(1) allows a court, "for good cause, to deny, restrict, or defer discovery or inspection, or grant other appropriate relief." This rule provides broad remedies for prosecutorial noncompliance in discovery, *United States v. Katz*, 178 F.3d 368, 372 (5th Cir. 1999), and district courts "ha[ve] broad discretion to administer sanctions for the violation of a valid discovery order." *United States v. Campagnuolo*, 592 F.2d 852, 858 (5th Cir. 1979). Specifically, Jarman refers to subsection 16(a)(1)(E), which states:

> (E) Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers,

6

>documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession custody, or control and:
>
>>(i) the item is material to preparing the defense;
>>(ii) the government intends to use the item in its case-in-chief at trial; or
>>(iii) the item was obtained from or belongs to the defendant

Fed. R. Crim. P 16(a)(1)(E). When considering if a party violated Rule 16, a court "should consider factors such as the reasons why disclosure was not made, the prejudice to the opposing party, the feasibility of rectifying that prejudice by granting a continuance, and other relevant circumstances. *Katz*, 178 F.3d at 372. Further, when evaluating potential violations, a court "should impose the least severe sanction that will accomplish the desired result—prompt and full compliance with the court's discovery orders." *Id*. He also refers to jurisprudence supporting the notion that a district court may impose sanctions for violations of discovery agreements, including in criminal matters. E.g. *United States v. Russell*, 109 F.3d 1503, 1510 (10th Cir. 1997). Jarman argues that the facts demonstrate that the government "intentionally violated the discovery [o]rder and the joint protective order." (Doc. 115-1 at 21). He also argues that the government's violations were designed to cover up the fact that they could not produce an E01 image, and he points to the costs and delay that resulted from the back-and-forth over the format as sufficient prejudice to justify suppression as a remedy. The government contends that it has complied with the order and not violated any agreement by producing the DD image, and they contend that the delay and expenses are Jarman's own fault for "erroneously" claiming the image was deficient such that Loehrs could not conduct an examination. (Doc. 137 at 26).

The government's initial decision to create a DD image of the laptop hard drive, when it created an E01 image of the other two, may appear suspect, but DD is an accepted format for forensic imaging. Jarman suggests that this supports his claim of willful deceit and tampering,

but the Court does not find this to prove that allegation. As the government indicates, the initial order does not specify a format, and the government did not intentionally violate any agreements. Rather, the parties had an initial misunderstanding, contested the issue in front of the Court, and once the government conceded that it would produce the E01 formatted image, they could not due to "bad sectors." The government is permitted to vigorously defend its positions, even if it ultimately concedes or loses, and the log of the examiner with the times and dates of when he created image is, as the government notes, an acceptable alternative to the built-in log in an E01 file. If Jarman wishes to cross-examine the examiner and challenge his credibility regarding what he did during the imaging process, he will have that opportunity at trial. It is not necessary for the Court to consider the factors from *Katz*; they are designed to assist the Court in fashioning a remedy to ensure compliance with discovery orders, and the Court finds that the government did not violate the discovery order by producing a DD image and subsequently arguing against Jarman's requests for sanctions and an E01 image.

## Conclusion

For the foregoing reasons, Jarman's Motion to Dismiss or Alternatively Suppress the Laptop Hard Drive (Doc. 115) is DENIED.


Signed in Baton Rouge, Louisiana, on August 4, 2015.

                                                    _____
                                                    **JUDGE JAMES J. BRADY**
                                                    **UNITED STATES DISTRICT COURT**
                                                    **MIDDLE DISTRICT OF LOUISIANA**