**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA

VERSUS                                           CRIMINAL NO. 11-38-SDD-EWD

GEORGE WILLIAM JARMAN

<u>**RULING**</u>

This matter is before the Court on the *Motion for Early Termination of Supervised Release*[1] filed by Defendant, George William Jarman ("Defendant").  The United States ("the Government") has filed an *Opposition*[2] to this motion, to which Defendant filed a *Reply*.[3]  The Court also consulted with the United States Probation Department in consideration of this motion.  For the following reasons, the motion will be denied.

**I.      BACKGROUND**

On October 26, 2015, Defendant pled guilty to one count of attempting to receive a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1).[4] The Defendant was sentenced to a term of 60 months imprisonment followed by a term of supervised release of five years.[5] In addition to the standard supervised release conditions, Defendant's special conditions include mental health and sex offender evaluations and treatment, consent to periodic searches of electronic devices, and computer use monitoring by United States Probation.[6]

---

[1] Rec. Doc. No. 269.
[2] Rec. Doc. No. 271.
[3] Rec. Doc. No. 276.
[4] Rec. Doc. No. 231.
[5] Rec. Doc. No. 253.  The Government requested a term of 10 years at sentencing.  Rec. Doc. No. 275.
[6] *Id.*

68718

Defendant was released from incarceration on September 20, 2019. On October 23, 2020, just over one year into his five-year supervised release term, Defendant filed the pending *Motion for Early Termination of Supervised Release.*

## II.    APPLICABLE LAW

Under 18 U.S.C. § 3583(e)(1), after considering the factors set forth in 18 U.S.C. § 3553(a), a court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release ... if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."[7] Among the factors that a court must weigh are: the nature of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense and to deter criminal activity, the need to protect the public, the importance of rehabilitating the defendant, and the kinds of sentences and sentencing ranges available.[8]

## III.    ARGUMENTS

Defendant moves to have his supervised release terminated on several grounds. Defendant contends that, even if terminated by this Court, he will continue to be required to report to the East Baton Rouge Sheriff's Department and Baton Rouge City Police every six months as a registered sex offender.  Defendant also claims that he has been fully compliant with the conditions of his supervised release, including submitting to alcohol use assessments and participating in a 13-week small group session for cognitive therapy, along with all other mandated therapy.

---

[7] 18 U.S.C. § 3583(e)(1).
[8] See 18 U.S.C. § 3553(a).

68718

During his incarceration, Defendant participated in the Residential Drug & Alcohol Rehabilitation Program (RDAP) aimed at relapse prevention skills to avoid returning to addictive behaviors.  He was ultimately a mentor, assisting the counselors in sessions of the program until he was released to the halfway house in May 2019.   Defendant continued these therapies following his release.

Defendant offers the following facts that he contends support his request for early termination: (1) Defendant is 73 years old and has three adult children, all of whom live in other states and can only visit him rarely, and Defendant has not yet been able to visit with his grandchildren; (2) the travel restriction also interferes with his ability to obtain employment in a field that fits his skill-set, and job searching has been further complicated by the pandemic; (3) the travel restriction interferes with Defendant's ability to play in a band he has long been affiliated with as many of the scheduled gigs are at functions outside the Middle District of Louisiana; (4)  Defendant's restricted internet access also impedes his ability to search for employment, and he cannot sustain himself only on his Social Security benefits; although he received approval for internet access eligibility last year, the pandemic has prevented a probation officer from entering his home and placing the monitoring device on his computer.

The Government responds, highlighting several details of Defendant's crime, and arguing that the conditions of which Defendant complains are not sufficiently significant inconveniences as to outweigh the need for supervised release.  The Government also argues that these inconveniences can be worked out by cooperating with the U.S. Probation Department.   The Government maintains that continuing the Defendant's supervised release "will best protect the public, deter the defendant from recidivism, and

68718

achieve consistency among sentences."[9]   Additionally, "employment limitations are not

necessarily sufficient to warrant early termination."[10]

The Government also argues that Defendant's completion of supervised release

is imperative after consideration of the Sec. 3553(a) factors.  Specifically, the Government

maintains that, based on the nature of the Defendant's crime, the Fifth Circuit has held

that a sexual crime against children "'may reflect deep-seated aberrant sexual disorders

that are not likely to disappear within a few years of release from prison.'"[11]   Further,

Congress and the Sentencing Commission have noted the "high rate of recidivism in

convicted sex offenders, especially child sex offenders," which results, in many instances,

in courts imposing a life time of supervised release for child sex offenders.[12]   The

Government argues that the Defendant's history of amassing a "large collection of child

pornography" between March 2006 and December 2008, indicates the need for continued

supervision.[13]

The Government also argues that continued supervision of the Defendant protects

the public interest.  The Government claims that allowing this Defendant unmonitored

internet access defeats the purpose and goal of supervised release.  While Defendant

notes that he did not receive a condition that he refrain from being around children, he

was convicted of a sex crime against children – via the internet – committed without the

---

[9] Rec. Doc. No. 271, p. 3.
[10] *Id.* at pp. 6-7 (quoting *United States v. Reed*, No. 15-100, 2020 WL 4530582, at *3 (E.D. La. June 5, 2020)(citing *United States v. Guidry*, No. 3:19-CR-322-S, 2020 WL 908542 at *2 (N.D. Tex. Feb. 13, 2020); *United States v. Arledge*, No. 5:06-Cr-18-DCB-JCS, 2020 WL 3504845 at *2 (S.D. Miss. June 3, 2015))).
[11] *Id.* at p. 3 (quoting *United States v. Armendariz*, 451 F.3d 352, 361 (5th Cir. 2006)(citing H.R. Rep. No. 108–66, at 49–50 (2003))).
[12] *Id.* at pp. 3-4 (quoting *United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006)).
[13] *Id.* at p. 4.

need to be around children.   Thus, the Government contends, Defendant's unfettered internet access still poses a risk to victims of child pornography.

The Government further claims that Defendant's continued supervision promotes the interest of consistency in sentencing.  Five years of supervised release is not at all onerous considering that lifetime supervised release is often imposed with crimes of this nature.[14]   Moreover, the Government consulted with the U.S. Probation officers in the Middle District of Louisiana who advised they knew of no defendant in our court that was convicted of a child pornography charge but had supervised release terminated early.

The Government also challenges Defendant's assertion that his exemplary behavior on supervised release warrants early termination.   Rather, numerous courts have held that: "[C]ompliance with applicable terms and conditions of probation is expected of all defendants and does not warrant early termination."[15]   Thus, Defendant's conduct in prison and thus far on supervised release is a reasonable expectation, not an extraordinary circumstance that warrants early termination.

Finally, the Government contends the Defendant's requirement to register as a sex offender under Louisiana Law for several years does not substitute for the goals of supervised release.   Indeed, the Fifth Circuit has explicitly held that "the district court's

---

[14] The Government cites: *United States v. Lyons*, 564 F. App'x 131, 133 (5th Cir. 2014)(affirming lifetime supervised release term and lifetime internet use ban in receipt of child pornography case); *United States v. Orta*, 559 F. App'x 397 (5th Cir. 2014)(affirming lifetime supervised release in child pornography possession case); *United States v. Planck*, 493 F.3d 501 (5th Cir. 2007)(affirming lifetime supervised release term in child pornography possession case).

[15] The Government cites: *Reed*, at *4; *see also United States v. Weintraub*, 371 F.Supp.2d 164, 166-67 (D. Conn. 2005)("Model prison conduct and full compliance with the terms of supervised release is what is expected of [a] defendant and all others serving terms of imprisonment, and does not warrant early termination."); *United States v. Medina*, 17 F.Supp.2d 245, 247 (S.D.N.Y. 1998) (unblemished post-incarceration conduct alone "cannot be sufficient reason to terminate the supervise release since, if it were, the exception would swallow the rule"); *United States v. West*, 2011 WL 1458723 (M.D. Ga 2011) ("being a productive member of society and exhibiting good behavior is what is expected of every individual, especially those who have been convicted of a criminal offense and are currently serving a term of supervised release").

belief that the state sex-offender registration requirement was a sufficient substitute for federal supervised release was unreasonable."[16]    The court explained that state sex offender registration requirements failed to include "rehabilitative resources, intensive monitoring, or publicly funded post[-]confinement assistance" that federal supervised release provides.[17]

In response, Defendant claims that the Government has given an unfair narrative as to Defendant's criminal conduct and "refers to conduct that occurred 14 years ago and relies upon allegations in the Presentence Report which the Government never proved and which were not included in the stipulated "Factual Basis" of Mr. Jarman's plea agreement."[18]    Defendant also contends that the Government's position does not take into account his exemplary conduct while on pre-trial supervision, when he wore an ankle monitor and was fully compliant in inspections, reporting, and attending counseling sessions, for over five years.    Essentially, Defendant contends he has "always accepted responsibility for his conduct, and he has participated in years of counseling about changing behaviors. Mr. Jarman has suffered dearly for his conduct, and it is now time that Mr. Jarman be allowed to put this regrettable chapter of his life behind him."[19]

## IV.    ANALYSIS

The Court has carefully considered the arguments by the Parties, reviewed the Sentencing Transcript and PSR, and considered applicable jurisprudence.    The Court finds that the Defendant's motion should be denied.    The Court notes the Defendant's

---

[16] *Armendariz*, 451 F.3d at 361–62.
[17] *Id.*    Defendant argues this case is distinguishable because, in *Armendariz*, the issue was that no supervised release was mandated as part of the sentence.  The Court notes that the facts are not identical, but the principles stated by the Fifth Circuit are applicable here.
[18] Rec. Doc. No. 276, p. 1.
[19] *Id.*  at p. 4.

satisfactory performance during his pre-trial detention, incarceration, and current time on

supervised release; however, the Government is correct that, pursuant to applicable

jurisprudence, he does not present any extraordinary circumstances which would merit

the termination of his supervised release.  Rather, Defendant is merely abiding by the

terms of his supervised release, which is the expectation for all defendants.[20]

Further, while Defendant challenges the factual background presented by the

Government via Defendant's PSR, Defendant raised this objection to his sentencing

judge, and it was overruled as a matter of law.[21]  As another section of this Court

previously explained:

> The Fifth Circuit Court of Appeals has held that a presentence report
> "generally bears sufficient indicia of reliability to be considered as evidence
> by the sentencing judge in making factual determinations required by the
> sentencing guidelines." *U.S. v. Trujillo*, 502 F.3d 353 (5th Cir.2007); *U.S. v.
> Franklin*, 148 F.3d 451 (5th Cir.1998).  A district court "may adopt the facts
> contained in a [presentence report] without further inquiry if those facts have
> an adequate evidentiary basis with sufficient indicia of reliability [,] and the
> defendant does not present rebuttal evidence or otherwise demonstrate that
> the information in the PSR is unreliable." *Trujillo*, at 357. "The defendant
> bears the burden of showing that the information in the PSR relied on by
> the district court is materially untrue." *Id*.[22]

At Defendant's sentencing, the Court addressed Defendant's Objection No. 1, which was

"that there were numerous allegations contained in the factual basis that were not in -- or

there are numerous allegations in the presentence report that were not included in the

stipulated factual basis and that I should not consider those and that they should not be

---

[20] *See United States v. Hayes*, No. 01-311, 2013 WL 532874 (E.D. La. Sep. 20, 2013).
[21] *See* Sentencing Transcript, Rec. Doc. No. 275 at 5-9.  The sentencing judge did grant Defendant's objection to victim impact letters being in included in the PSR, and he did not consider them in sentencing the Defendant, particularly since they did not impact a Rule 11(c)(1)(C) stipulated sentence.
[22] *United States v. Lomas*, No. 06-158-JJB-CN, 2009 WL 1809907, at * 7 (M.D. La. June 23, 2009).

included in the presentence report."[23]  The Court stated:  "I'll hear you on that, but I think

the law is pretty clear as well."[24]  Defense counsel responded:

> My only comment, your honor, is I guess I'd step in to say that I don't know
> so much that we are asking the court not to consider them, we are merely
> asking that they not be part and parcel of the presentence report only
> because there's just so much detail outlined in those statements that are
> surplusage. And actually some of it is not relevant to the offense that Mr.
> Jarman's charged with.

> We are not suggesting that these statements can't be included in the record
> and under seal for that matter, it's just that we take the position that this
> presentence report is something that's going to follow Bill Jarman around
> for quite a number of years and there's just a lot of discussion in there.[25]

As demonstrated, Defendant did not present rebuttal facts or evidence to challenge

the same paragraphs he now challenges in the present motion, and the real objection

was to the fact that these facts were "surplusage" that might "follow [Defendant] around

for quite a number of years."  The sentencing judge did not exclude these paragraphs

from the PSR, and this Court is not persuaded that these facts are false or that they

misrepresent the conduct that led to Defendant's indictment and conviction.

The jurisprudence discussed above easily dispenses with other arguments

advanced by the Defendant regarding internet access, travel impediments, and

employment issues.  As the Eastern District Court held in *United States v. Reed*, while

sympathetic to the defendant's claim that he "cannot work in his chosen field" while on

supervised release, "this is not enough to demonstrate 'changed circumstances'

warranting termination of his probation after only one year. Other courts have similarly

concluded that employment limitations are not necessarily sufficient to warrant early

---

[23] Rec. Doc. No. 275 at 5:10-15.
[24] *Id.* at 5:16-17.
[25] *Id.* at 5:18-25 through 6:1-5.

termination."[26]   The Southern District of Texas Court held in *United States v. Jones* that the defendant was not entitled to early termination of his supervised release where he claimed that his travel restrictions interfered with family relationships and employment prospects.[27]   As to Defendant's internet access, the Court believes that this is an issue that can be addressed by cooperating with Defendant's probation officer.

Regarding consistency of sentencing, the Court consulted with the U.S. Probation Office for the Middle District of Louisiana, and the officers advised the Court that typically, sex offenders are not eligible for early termination after considering the 18 USC § 3553(a) factors; specifically, the nature and circumstances of the offense and the history and characteristics of the offender.   The probation officer did not recommend early termination for this Defendant.

---

[26] *Reed*, 2020 WL 4530582, at *3 (citing *e.g., United States v. Guidry*, No. 3:19-CR-332-S, 2020 WL 908542, at *2 (N.D. Tex. Feb. 13, 2020), *report and recommendation adopted*, No. 3:19-CR-0332-S, 2020 WL 906303, at 1–2 (N.D. Tex. Feb. 25, 2020) (rejecting a request for early termination of supervised release for a defendant who wished to "pursue employment opportunities that could require location, or traveling, to areas outside the Northern District of Texas"); *United States v. Arledge*, No. 5:06-CR-18-DCB-JCS, 2015 WL 3504845, at *2 (S.D. Miss. June 3, 2015) ("[A]lthough the supervised release may inhibit Arledge's ability to find more lucrative employment, this does not warrant early termination."); *United States v. Caruso*, 241 F. Supp. 2d 466, 469 (D.N.J. 2003) ("While Caruso has generally complied with the conditions of his probation, there is nothing contained in the record before me of an unusual or extraordinary nature that would warrant the early termination of his probationary sentence. Moreover, this motion appears to have been prompted solely by the fact that Caruso will not be able to reapply for admission to the New York bar until he successfully completes his term of probation on April 19, 2004. This is hardly a changed circumstance which warrants the early termination of his probation.").
[27] No. V-11-21, 2013 WL 2417927 (S.D. Tx. June 4, 2013).

68718

**V.     CONCLUSION**

For the foregoing reasons, Defendant's *Motion for Early Termination of Supervised Release*[28] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana the 11th day of August, 2021.


_____

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[28] Rec. Doc. No. 269.

68718